◾ In the Matter of NEW YORK LIFE INSURANCE Co., Petitioner, v STATE TAX COMMISSION, Respondent. In the Matter of METROPOLITAN LIFE INSURANCE Co., Petitioner, v STATE TAX COMMISSION, Respondent. — Proceedings pursuant to CPLR article 78 (transferred to this court by order of the Supreme Court at Special Term, entered in Albany County) to review determinations of the State Tax Commission, which sustained sales and use tax assessments imposed pursuant to section 1105 of the Tax Law. The petitioners, New York Life Insurance Company (hereafter New York), and Metropolitan Life Insurance Company (hereafter Metropolitan), are engaged in the business of selling health and life insurance contracts. In the furtherance of this business, they deem it necessary to solicit confidential character reports, in many instances, so as to be better informed as to the insurance risk presented by the various applicants. To this end, the petitioners utilize the services of two separate duly licensed detective agencies, Hooper-Holmes, Inc., and Retail Credit Co. (now Equifax, Inc.), whose private investigators conduct field investigations of the depth and detail necessary to provide the requested information concerning the particular applicant. The results of an investigation are reduced to writing and the original report is sent to New York or Metropolitan, as the case may be, and the agency retains a copy for its file. The copy is kept for a period of from one to three years depending upon its nature and scope. Hooper-Holmes, Inc., and Equifax are paid by the company requesting the report on a case-by-case basis. New York and Metropolitan were assessed a sales and use tax on these

reports for the period from December 1, 1971 to February 28, 1975, as purchasers of "information services" as described in section 1105 (subd [c], par [1]) of the Tax Law, and the tax was imposed upon the total sum of moneys paid by New York and Metropolitan to Hooper-Holmes, Inc., and Equifax for the investigative services and reports. These two cases were consolidated and jointly presented at the Tax Commission hearing to review the validity of the assessment. After this hearing, the Tax Commission rendered its final decision in which it upheld the validity of the assessment. While the amount of the tax and deficiency to be paid will be different for each company, the issues presented in the two cases are concededly identical and are concerned with the interpretation of section 1105 (subd [c], par [1]) of the Tax Law which imposes a sales tax upon: "The furnishing of information by printed, mimeographed or multigraphed matter or by duplicating written or printed matter in any other manner, including the services of collecting, compiling or analyzing information of any kind or nature and furnishing reports thereof to other persons, but *excluding the furnishing of information which is personal or individual in nature and which is not or may not be substantially incorporated in reports furnished to other persons*" (emphasis added). The commission bases its entitlement to impose the tax on its administrative finding that: "information kept on file by both Retail Credit and Hooper-Holmes could be a significant contributing factor in the reports furnished applicants, and that such information could be substantially incorporated into reports furnished to other persons, within the meaning of section 1105 (c) (1) of the Tax Law." There are no reported cases dealing with the precise issue presented so we turn, instead, to some of the basic principles and rules of statutory construction. Where the interpretation of a statute or its application involves knowledge or understanding of underlying operational practices or entails the evaluation of factual data and inferences to be drawn therefrom, the courts regularly defer to the governmental agency charged with the responsibility for administration of the statute. If its interpretation is not irrational or unreasonable, it will be upheld *(Matter of Howard v Wyman,* 28 NY2d 434). However, where as here, the question is one of pure statutory reading and analysis, dependent only on accurate apprehension of legislative intent, there is little basis to rely upon any special competence or expertise of the administrative agency and its interpretive regulations are, therefore, to be accorded much less weight. And, of course, if the regulation is at variance with the clear wording of a statutory provision, it should not be accorded any weight *(Kurcsics v Merchants Mut. Ins. Co.,* 49 NY2d 451, 459; see *Matter of Adams [Government Employees Ins. Co.],* 52 AD2d 118, 121). Also to be kept in mind is the principle that while the taxpayer ordinarily must bear the burden of overcoming a tax assessment *(Matter of Liberman v Gallman,* 41 NY2d 774, 777), where, as here, an exclusion rather than an exemption is involved, the statute must be strictly construed in favor of the taxpayer *(Matter of Grace v New York State Tax Comm.,* 37 NY2d 193). Moreover, "It remains a basic principle of statutory construction that a court will 'not by implication read into a clause of a rule or statute a limitation for which *** no sound reason [can be found] and which would render the clause futile' " *(Matter of Industrial Comr. of State of N.Y. v Five Corners Tavern,* 47 NY2d 639, 646-647, quoting *Lederer v Wise Shoe Co.,* 276 NY 459, 465). Application of these and other principles readily leads us to conclude that respondent's interpretation of the statutory language was both unreasonable and irrational. Resolution of the issue presented requires only a clear reading and analysis of section 1105 (subd [c], par [1]) of the Tax Law. It clearly and

certainly excludes information which is personal or individual in nature. The interview phase of these investigations, the primary basis of the report, is tailored in each instance to the particular specifications as promulgated by the petitioner company in its request. It is somewhat difficult to imagine how any information could be more personal or individual. We reject respondent's argument that the reports lose their personal and individual nature, thereby becoming taxable, because the petitioners *could* share them with other insurance companies. There is nothing in the Tax Law that restricts the purchaser from so doing if it chooses. Assuming, *arguendo,* that respondent's assertion is correct, there is not a scintilla of credible evidence in this record to establish that there was any such sharing and the uncorroborated hearsay speculation of a witness without knowledge of the facts falls far short of the requirements set forth in *300 Gramatan Ave. Assoc. v State Div. of Human Rights* (45 NY2d 176). Respondent's interpretation or construction of the phrase "substantially incorporated" is arbitrary and without support from any source. Respondent does not find that information is substantially incorporated into subsequent reports, which are requested in about 10% of the cases, but rather concludes that it "could" and "might" be substantially incorporated in a subsequent report. This is a ludicrous conclusion for the reason that the requesting company already has the original information in the first report. In calling for a second report it seeks to obtain only an update to reflect relevant changes occurring subsequent to the first report, and there is no evidence here of any kind that information previously gathered was incorporated in any fashion in the seldom requested second reports. Fairness and reason deny a conclusion that there was substantial incorporation of previously gathered information. In essence, respondent supports the imposition of the tax upon New York and Metropolitan on the doubtful theory that the investigative agencies *might* receive a request to conduct an investigation of a party previously investigated, and that it *might* have information in its files which *may* or may not become substantially incorporated in the subsequent report. At best, the first report might serve as a lead and cannot be equated with substantially incorporating previously obtained information. Were we to adopt the respondent's reasoning we would be, by implication, reading into the language of the statute a limitation for which no sound reason can be found and which could render the exclusion futile. The respondent overlooks the fact that it is the vendor's activities that are the focus of this section and it is aimed at information supplied by businesses whose primary function is to collect and disseminate information. In construing a statute, the court should consider the mischief sought to be remedied and should favor the construction which will suppress the evil and advance the remedy *(Lincoln First Bank of Rochester v Rupert,* 60 AD2d 193). In concluding, we note that while certainly not dispositive for the reason that though respondent has not taxed this type of service before it can change its taxing policy *(Matter of National Elevator Ind. v New York State Tax Comm.,* 49 NY2d 538, 547-548), it is significant that respondent, in a 1980 declaratory ruling (No. 79-01), concluded that reports prepared for customers concerning the credit of a particular individual or business were "personal and individual in nature and are not or may not be substantially incorporated in reports furnished to other persons and, therefore, such service is within the exclusion accorded under section 1105 (c) (1) of the Tax Law".* Significance attaches only for

---

* In reaching this conclusion, respondent cited an example contained in its own regulations to the effect that "the report submitted by a private detective agency to
*(n. contd.)*

the reason that this demonstrates vacillation, inconsistency and obvious doubt concerning the respondent's own interpretation of the statute. Since the government may take nothing except what is given by the clear import of the words used, a well-founded doubt as to the meaning of the act defeats the tax *(Matter of Grace v New York State Tax Comm.,* 37 NY2d 193, 196, *supra; People ex rel. Mutual Trust Co. of Westchester County v Miller,* 177 NY 51, 57; *Matter of American Cyanamid & Chem. Corp. v Joseph,* 308 NY 259, 263). Respondent's determinations are irrational, unsupported and arbitrary and should be annulled. Determinations annulled, and petitions granted, with costs. Sweeney, J.P., Kane, Main and Mikoll, JJ., concur.

Herlihy, J., dissents and votes to confirm in the following memorandum. Herlihy, J. (dissenting). The primary issue posed in the majority opinion is whether the respondent has made a legally erroneous interpretation of section 1105 (subd [c], par [1]) of the Tax Law. The statutory language is *not* susceptible of being limited to an exclusion based upon the information being personal or individual in nature. It quite explicitly requires, in addition, that such information either "not or *may not be* substantially incorporated in reports furnished to other persons" (Tax Law, § 1105, subd [c], par [1]; emphasis added). The record establishes that the business activity herein reviewed involved more than the mere furnishing of a report or information which is personal or individual in nature. Files are opened and kept. Information in the files *is* later used. In short, the information neither is nor becomes the exclusive property of the petitioners. In my opinion, the interpretation of the statute by the respondent is not so obtuse as to be unreasonable or irrational. Upon its face, the statute explicitly exempts or excludes only the furnishing of information to one person. The petitioners have not conclusively established that such a situation existed. Finally, whatever "vacillation, inconsistency and obvious doubt" respondent may have as to a proper interpretation of the statute is not relevant on the question of its correct interpretation. The 1980 declaratory ruling referred to by the majority is not presently before this court, and in view of its favorable treatment of the taxpayer it is not likely to be here. Reading the record as a whole discloses that the determinations of the respondent are supported by substantial evidence. The determinations should be confirmed.

its clients is a personal report, the charge for which is not taxable" (20 NYCRR 527.3 [b] [2], Example 1).