In the Matter of RICH PRODUCTS CORPORATION, Petitioner, v RODERICK G. W. CHU et al., Constituting the Tax Commission of the State of New York, Respondents.

Third Department, November 25, 1987

### APPEARANCES OF COUNSEL

*Hodgson, Russ, Andrews, Woods & Goodyear (Victor T. Fuzak, Paul R. Comeau, Mark S. Klein* and *Benjamin M. Zuffranieri, Jr.,* of counsel), for petitioner.

*Robert Abrams, Attorney-General (Francis V. Dow* and *Nancy A. Spiegel* of counsel), for respondent.

### OPINION OF THE COURT

LEVINE, J.

Petitioner is a major manufacturer and national distributor of frozen dairy and dessert products, including coffee creamers and a variety of cakes, pastries and pies. In furtherance of its marketing strategies and research, petitioner uses the services of Selling Areas Marketing, Inc. (SAMI). SAMI collects data on the movement of grocery products of all kinds from 774 grocery warehouses in 54 identified markets throughout the United States. This information is broken down mainly by a simply worded description of the product category, the manufacturer, brand, subbrand, size, price and quantity per case. This raw data is entered into and processed through SAMI's computer system at fixed four-week intervals and covers the activities of more than 70% of all grocery items distributed nationwide.

It is uncontested that all of the written reports sold by SAMI to petitioner constitute the sale of information services for sales tax purposes under Tax Law § 1105 (c) (1). At issue here is whether certain reports, which SAMI prepares in response to the request of a particular client grocery manufacturer, such as petitioner, fall within the exclusion from the tax provided in that section for the "furnishing of information which is personal or individual in nature and which is not or may not be substantially incorporated in reports furnished to other persons" (Tax Law § 1105 [c] [1]). As to these reports, SAMI's sales representatives work with the individual client to create a program of marketing data retrieval to answer the specific informational requests of the client concerning the sales performances of one or more of its products in comparison with that of one or more of its competitors. First, the client chooses which of its products it wishes to have reported on and the competing products to which it wants comparisons made. Second, the client selects the specific geographical market area to be surveyed. Third, the client chooses the units of measurement which are to be used for comparison

purposes, such as dollar volume of sales and article volume of individually packaged units, servings or cases sold, including the fixing of equivalent product volumes when the competing products are sold in different physical forms (e.g., to quantify volume equivalents for petitioner's frozen coffee creamers as against competing powdered creamers). Finally, the client chooses the relevant time frame in four-week periods, or multiples thereof, for which the survey is to be made.

Three of the foregoing types of reports were introduced in evidence: (1) concerning coffee creamers in the Los Angeles-San Diego market for the four-week period of June 2 to June 29, 1979 and the 52-week period of July 1, 1978 to June 29, 1979; (2) concerning coffee creamers in the Chicago market in four-week periods from September 1980 through June 1981, and comparing consecutive 52-week periods starting in June 1979 and ending in June 1981; and (3) concerning frozen sweet goods and pies in the New Orleans market in successive four-week intervals from April 28, 1984 through April 25, 1985, and cumulatively for the same time period. The evidence also established that SAMI enforces a rule absolutely barring disclosure of reports prepared for individual clients to any other client or the inclusion of such reports, in whole or in part, in reports furnished other clients.

The State Tax Commission upheld a sales tax assessment against petitioner for use of SAMI's services, finding that the information in the report failed to meet either of the two necessary elements of the exclusion. On review, petitioner claims that the record supports only one conclusion, that the information it receives in the foregoing types of SAMI reports is individual in nature and is not actually or likely to be incorporated in reports to others. The testimony was that each report is customized to fit the specific informational requests of the client and that the variables from which the client may select as to product, market location, time frame and units of measurement and equivalencies make it a virtual mathematical impossibility that all or part of a report to one client would be duplicated in a report to any other client. Indeed, petitioner argues, the Tax Commission's concession that the variables make it likely that reports ordered by petitioner and those ordered by its competitors would be different is totally inconsistent with and renders arbitrary the Tax Commission's ruling that the exclusion from the tax does not apply.

We agree with the Tax Commission that the fact that no two reports to different customers are likely to be the same

and that such reports are customized in some respects to respond to the needs of the particular client is not dispositive of entitlement to the exclusion, particularly where, as here, the information contained therein is derived from a single data repository which itself is not confidential and is widely accessible. To rule otherwise would be inconsistent with our holdings that the exclusion did not apply to information furnished in response to the specific client requests (1) for particular marketing data in *Matter of Towne-Oller & Assocs. v State Tax Commn.* (120 AD2d 873); (2) for accident and traffic violation records of specific automobile insurance applicants in *Allstate Ins. Co. v Tax Commn.* (115 AD2d 831, 834, *affd* 67 NY2d 999); and (3) for the specific export-import information sought by individual subscribers in *Matter of Twin Coast Newspapers v State Tax Commn.* (101 AD2d 977, *appeal dismissed* 64 NY2d 874). In none of the foregoing cases were the reports actually or likely to be identical to the reports furnished others.

We are also of the view that there is evidence in the record supporting the Tax Commission's inference that the information contained in the reports is or may be substantially incorporated in reports furnished to others. The reports introduced in evidence, presumably typical of SAMI's services, are comprehensive surveys over extended time frames as to the sales performances of various product lines measured by unit volume, dollar volume, share of market in units and dollars, and changing trends thereof. The same comprehensive data is supplied in the reports for what appears to be all of the national and local brands of competing products of the same generic categories in the pertinent markets. Although SAMI's billing invoices for each of its reports do not identify the particular market surveyed therein, the frequency of repetitive billings for the same products during the audit period is highly suggestive that SAMI regularly furnished reports on most of petitioner's products in most of the major markets. Concededly, SAMI in fact furnished reports to petitioner's competitors. None of such reports was submitted by petitioner or SAMI to demonstrate that client choices on the variables of product, unit measurement, time frame and market location resulted in substantial variations in the informational content of the reports. The one exhibit produced comparing any of such variables as between petitioner and its competition showed a substantial overlap in the product lines requested to be surveyed. There is certainly nothing in the record to

suggest that petitioner's competition would not seek marketing information as comprehensive as petitioner seeks in terms of product lines, time frames and markets. As to measurements, the SAMI executive who testified for petitioner disclaimed knowledge as to whether the equivalents chosen by petitioner were the same as or different from those chosen by its competitors.

In light of the foregoing, plus the fact that a common data base is used for all reports which are prepared on identical four-week intervals and in the absence of what should have been readily available evidence to prove to the contrary, the Tax Commission could reasonably infer that the significant and ultimate information on comparative sales performances and of shares of the market of truly competing products in most major markets will substantially overlap in the reports furnished by SAMI to petitioner and to its competitors. At the very least, petitioner failed to sustain its burden of proof to overcome the tax assessment by evidence demonstrating that the information it bought from SAMI is not and may not be substantially incorporated in SAMI's reports to competing manufacturers *(see, Matter of Grace v New York State Tax Commn.,* 37 NY2d 193, 195).

Since the purchased information's "substantial incorporation" in reports to others is alone sufficient to disqualify the sales in question for the exclusion, we need not address petitioner's procedural and factual objections to the Tax Commission's alternative ground for denying the exclusion, i.e., that the information was not personal or individual in nature (Tax Law § 1105 [c] [1]).

MAHONEY, P. J., KANE, CASEY and WEISS, JJ., concur.

Determination confirmed, and petition dismissed, with costs.