WESTWOOD PHARMACEUTICALS, INC., Respondent, v RODERICK G. W. CHU, as Commissioner of the Department of Taxation and Finance of the State of New York et al., Appellants. (Appeal No. 2.)

Fourth Department, December 21, 1990

## APPEARANCES OF COUNSEL

*Hodgson, Russ, Andrews, Woods & Goodyear (Victor Fuzak* of counsel), for respondent.

*Robert Abrams, Attorney-General (Daniel Smirlock* of counsel), for appellants.

### OPINION OF THE COURT

BALIO, J.

The issue on this appeal is whether certain marketing reports prepared by A.C. Nielsen Company (Nielsen) for the plaintiff Westwood Pharmaceuticals (Westwood) constitute information services that are subject to sales tax pursuant to section 1105 (c) of the Tax Law. Specifically, the question is whether the reports are excluded from taxation because they are "personal or individual in nature" and the information is not "substantially incorporated in reports furnished to other[s]" (Tax Law § 1105 [c] [1]). We conclude that Supreme Court correctly determined that the marketing information services and reports purchased by plaintiff were excluded from the sales tax imposed by section 1105 of the Tax Law (147 Misc 2d 494), and accordingly, we affirm.

Westwood is a manufacturer of various health and beauty products. For several years, Westwood has engaged Nielsen to provide marketing information services and reports concerning the market performance of several of its products, including Keri hand and body lotion, Alpha-Keri bath oil and Presun sunscreen. Westwood uses the services and reports for

the development of marketing strategies and to assist it in remedying specific marketing problems relating to these products. Nielsen utilizes a four-step process in the preparation and distribution of its marketing information. First, Nielsen collects raw sales and market data. Most of the raw data is provided by the particular client, but Nielsen also obtains raw data from field investigations at retail outlets. No raw data is acquired from published sources readily available to any interested party. Nielsen then converts this raw data into "new data" or a "sample frame". This conversion is accomplished by the use of Nielsen's confidential analytic and statistical procedures designed to project and estimate market activity in specific locations or markets. Essentially, this secret process transforms raw data into a different format, the "sample frame", and each "sample frame" constitutes a separate and distinct data base for the individual client. The "sample frame" is never disclosed to Westwood or to any other client, and the "sample frame" is not incorporated into any report provided to the client. Third, Nielsen creates a computer program based upon the unique specifications and confidential directions of each client. In the final step of the process, the individualized computer program utilizes the "sample frame" prepared exclusively for Westwood and generates a market information report for Westwood. The information generated for Westwood is held in strict confidence and is never included in market reports furnished to other clients. Indeed, because the "sample frame" and computer program are tailored to meet each client's specific needs, no two reports are alike and "sample frame" information is not shared between clients.

Section 1105 of the Tax Law was enacted in 1965, imposing a State-wide sales tax upon the receipts from sales of personal property and services, including information services (L 1965, ch 93, § 1). Subdivision (c) of section 1105, insofar as it is pertinent here, imposed a sales tax upon receipts from the sale of the following services: "(1) The furnishing of information by printed, mimeographed or multigraphed matter or by duplicating written or printed matter in any other manner, including the services of collecting, compiling or analyzing information of any kind or nature and furnishing reports thereof to other persons, but excluding the furnishing of information which is personal or individual in nature and which is not or may not be substantially incorporated in

reports furnished to other persons."* The State Department of Taxation and Finance (Department), from 1965 to 1987, did not attempt to impose a sales tax pursuant to Tax Law § 1105 (c) (1) or the Department's regulations (20 NYCRR 527.3) for the sale of marketing information by Nielsen. Instead, on October 7, 1985, counsel for the Department, following a Departmental audit of Nielsen's activities and services that was commenced in 1980, formally advised Westwood that Nielsen's marketing research services "are not subject to the New York State sales and use taxes".

Subsequent to the Department's advisory opinion that Nielsen's services were excluded from taxation, the Third Department, in *Matter of Towne-Oller & Assocs. v State Tax Commn.* (120 AD2d 873), held that marketing reports prepared by Towne-Oller and Associates for manufacturers of health and beauty products were subject to the sales tax provisions of Tax Law § 1105 (c) (1). The Department then advised Nielsen that, in light of the *Towne-Oller* decision, Nielsen should commence collecting sales tax on its marketing research services. Nielsen, in turn, advised Westwood that sales tax would be collected for its marketing services. Westwood commenced this action, seeking a judgment declaring that the services and reports provided by Nielsen are excluded from taxation under section 1105. Supreme Court concluded that because Nielsen's services and reports are entirely customized and wholly personal to the client and the information is not, and may not, be substantially incorporated in reports prepared for other clients, the information services provided for Westwood were excluded from taxation under Tax Law § 1105 (c) (1), and the court granted summary judgment in plaintiff's favor.

An information service that is "personal or individual in nature and which is not or may not be substantially incorporated in reports furnished to other persons" is excluded from sales taxation (Tax Law § 1105 [c] [1]; *see also, Matter of New York Life Ins. Co. v State Tax Commn.,* 80 AD2d 675, 676, *affd* 55 NY2d 758). In assessing whether the statutory exclusion applies, the statute is strictly construed in favor of the taxpayer *(see, Matter of Towne-Oller & Assocs. v State Tax Commn.,* 120 AD2d 873, 874, *supra; Matter of New York Life Ins. Co. v State Tax Commn.,* 80 AD2d 675, 676, *supra).* Thus, background character reports prepared by a private detective

---

* The quoted statutory language has not been changed since the original enactment.

agency concerning applicants for health and life insurance are considered personal and individual in nature even though the insurance company receiving the report could share it with other companies and some of the information in the report might be used by the agency in the preparation of subsequent reports concerning the same person *(Matter of New York Life Ins. Co. v State Tax Commn.,* 80 AD2d 675, *supra).* Where, however, a company simply extracts statistical data from published bulletins available to everyone and distributes the statistical extract to subscribers, the information service is not personal or individual in nature *(Matter of Twin Coast Newspapers v State Tax Commn.,* 101 AD2d 977, *appeal dismissed* 64 NY2d 874; *see also, Allstate Ins. Co. v Tax Commn.,* 115 AD2d 831, *affd* 67 NY2d 999 [involving computer printouts of data from selected motor vehicle reports obtained from the State Department of Motor Vehicles]). "Although each subscriber selects the statistics he desires, the *information furnished* is not of the uniquely personal nature contemplated by the" exclusion *(Matter of Twin Coast Newspapers v State Tax Commn.,* 101 AD2d 977, *supra;* emphasis added).

The Third Department decision in *Matter of Towne-Oller & Assocs. v State Tax Commn.* (120 AD2d 873, *supra)* is factually distinguishable. In that case, Towne-Oller prepared some 20 different reports for its subscribers. Most of the reports contained general market information compiled and correlated from one general source. These reports were distributed either to all subscribers or to a group of customers who made similar requests for market data in a certain category. These reports clearly were not personal or individual in nature and were materially indistinguishable from the statistical reports considered in *Matter of Twin Coast Newspapers v State Tax Commn. (supra)* and *Allstate Ins. Co. v Tax Commn. (supra).* The remaining market information reports were tailored to meet the specific information requests of a client and were distributed only to that client. These reports, though customized to some extent for each customer, were created from the same raw data base used in the preparation of similar reports to other customers, and that data base was derived from one general source. The court held that the reports, although tailored to satisfy the information request of the client, were not of a personal or individual character *(see, Matter of Towne-Oller & Assocs. v State Tax Commn., supra,* at 874). The Nielsen marketing services and reports at issue on this appeal are significantly different in nature. The reports do not

provide the same general information to several subscribers or to a particular class of subscribers. The raw data is not compiled from one general source. Indeed, much of the raw data is provided by the individual client. Most importantly, however, the information distributed to Westwood is prepared from a "sample frame". The Westwood "sample frame" is placed in a separate data base that is used only for the preparation of Westwood's report. It is not a common data base, and the "sample frame" is never disclosed to any client. A separate computer program is designed to meet the unique specifications of each client, and the information generated by this program is provided in the strictest confidence to the client and is never included in market reports furnished to other clients. Because the "sample frame" data and information distributed are unique to each client, the Nielsen services and reports are individual in nature *(see, Matter of New York Life Ins. Co. v State Tax Commn., supra)* and the information cannot be substantially incorporated into reports furnished to other persons *(see, Commissioner of Revenue v McGraw-Hill, Inc.,* 383 Mass 397, 420 NE2d 293; *cf., Matter of Rich Prods. Corp. v Chu,* 132 AD2d 175, *lv denied* 72 NY2d 802).

■ Defendants further contend that the action for a declaratory judgment should have been dismissed because plaintiff failed to exhaust its administrative remedies. This issue was not raised in opposition to the instant motion for summary judgment, and is not properly before us on appeal *(see, Adams v Perry's Place,* — AD2d — [decided herewith]; *Matter of Van Wormer v Leversee,* 87 AD2d 942). The issue is, in any event, without merit. It is settled law that, where no factual issue is raised, a declaratory judgment action may be maintained to challenge the validity or application of a particular statute without exhausting administrative remedies *(see, Dun & Bradstreet v City of New York,* 276 NY 198, 206; *National Merchandising Corp. v New York State Dept. of Taxation & Fin.,* 63 AD2d 785, 786; *Matter of Hospital Tel. Sys. v New York State Tax Commn.,* 41 AD2d 576, 577; *cf., Slater v Gallman,* 38 NY2d 1, 3-4; *Matter of First Natl. City Bank v City of N. Y. Fin. Admin.,* 36 NY2d 87, 92-93; *Allstate Ins. Co. v Tax Commn.,* 115 AD2d 831, *supra).* No factual issues have been raised in this case. The sole issue is the application of the

statute to the report services provided by Nielsen. Maintenance of a declaratory judgment action was, therefore, appropriate.

CALLAHAN, J. P., DOERR, DENMAN and LAWTON, JJ., concur.

Order and judgment unanimously affirmed, with costs.