OPINION OF THE COURT
Thomas W. Keegan, J.
This is a CPLR article 78 proceeding brought by Colonial Life Insurance Company of America (Colonial) challenging two regulations promulgated by the State Superintendent of Insurance pursuant to chapter 501 of the Laws of 1992. Petitioner challenges part of regulation 145 (11 NYCRR part 360) and all of regulation 146 (11 NYCRR part 361), arguing that both are beyond the scope of authority delegated to the agency by the Legislature and, additionally, that regulation 146 is unconstitutional as applied.
Chapter 501 requires commercial insurers doing business in New York to employ community rating and to offer open enrollment for any insurance market in which they participate. Open enrollment requires the insurer to accept any applicant for coverage offered by the insurer. Community rating requires the insurer to base the policy premium on the experience of the entire pool of risks covered by that policy without regard to age, sex, health status or occupation. Until this legislation was enacted, only Empire Blue Cross/Blue Shield (Empire) was required to provide coverage for high-risk applicants, serving as the insurer of last resort in New York. The purpose of chapter 501 was to broaden the availability and affordability of health insurance in New York by precluding commercial insurers from offering coverage only to low-risk individuals, a practice known as "cherry picking”.
The court is aware that Empire is currently the subject of several investigations, including an investigation into the *224 validity of statements made to the Legislature concerning financial losses which may have figured prominently in the enactment of chapter 501. These investigations have no bearing on the instant proceeding. This court’s task is simply to determine whether the regulations at issue comport with the intent of the Legislature when it enacted chapter 501 last year.
Before addressing the merits of the challenged regulations, the court must first address the threshold issue of standing raised by respondent who argues that petitioner neither has nor will suffer any injury in fact as a result of chapter 501. Respondent notes that payments petitioner may be required to make to an insurance pool established pursuant to the statute are not due until October of this year and that even if petitioner is required to pay into the pool, the payments can be factored into petitioner’s application for a rate increase. In reply, petitioner cites Matter of Dairylea Coop. v Walkley (38 NY2d 6) which held that Dairylea had standing to challenge the granting of a license to a competitor because it also was within the zone of interest sought to be protected under a statute designed to " 'stabilize the * * * distribution structure of the milk industry’ ”. (Matter of Dairylea Coop. v Walkley, at 11.) In Dairylea, however, there was no controversy over whether Dairylea would suffer injury as the result of the granting of a license to his competitor.
Respondent’s argument, that petitioner has not established its claim of injury in fact, is not without merit. However, in view of the Legislature’s strongly expressed interest in encouraging insurers to remain in the individual and small group markets to assure greater availability of health insurance in the State, the court is not inclined to dismiss the case summarily without considering the merits of the claim. "Standing principles, which are in the end matters of policy, should not be heavy-handed * * * While something more than the interest of the public at large is required to entitle a person to seek judicial review * * * proof of special damage or in-fact injury is not required in every instance.” (Matter of Sun-Brite v Board of Zoning & Appeals, 69 NY2d 406, 413.)
REGULATION 146-THE POOLING MECHANISM
"Where the interpretation of a statute or its application involves knowledge or understanding of underlying * * * practices or entails the evaluation of factual data and infer *225 enees to be drawn therefrom, the courts regularly defer to the governmental agency charged with the responsibility for administration of the statute.” (Matter of New York Life Ins. Co. v State Tax Commn., 80 AD2d 675, 676; see also, Matter of Medical Malpractice Ins. Assn. v Superintendent, 72 NY2d 753, 761-762.) Regulation 146 which establishes a pooling mechanism for the redistribution of insurance premium dollars among members of the industry is such a regulation.
"The power to regulate the insurance business is very broad * * * There is no doubt that under its regulatory power, the state may validly regulate the business of insurance * * * so long as such regulation is reasonable and does not deprive the insurance company of due process of law.” (68 NY Jur 2d, Insurance, § 3.)
Regulation 146 mandates that insurers who have a lower share of high-risk insureds contribute to the pool; insurers who have a higher share of high-risk insureds may withdraw from the pool. Petitioner contends that regulation 146 should be declared null and void because:
1. a mandatory pooling mechanism is an unconstitutional tax, taking by regulation or an illegal gift of State money to a private organization;
2. the Legislature intended the contributions to the pool to be based on an assessment of risk for policies written after the legislation became effective and not to existing policies;
3. the Legislature intended only commercial insurers and not Empire to participate in the pool;
4. the Legislature did not intend contributions to the pooling mechanism to be mandatory.
The court finds these arguments to be without merit.
As to the constitutionality of the regulation, the court agrees with respondent that the mandatory pool contributions do not constitute a tax and are within the State’s power to regulate the industry. Nor do the regulations constitute a taking by regulation because such a taking can only occur without just compensation. Under the new law, an insurer who is required to contribute to the pool may include the contribution amount in its rate increase application. In fact, in an effort to demonstrate that the statute would work to its detriment, petitioner points to the fact that it included the projected cost of its pool contribution in its most recent application for a rate increase and offers the granting of the request by the Insurance Department as proof that it has been *226 damaged. The court also agrees with respondent that any property interest petitioner has in its business arises from, and may be altered by, State law. The new law and regulations altering the conduct of petitioner’s business in the future are a lawful exercise of legislative power. Furthermore, chapter 501 specifies that certain sections of the new law will apply only to policies written after a future date. Since the section establishing the pooling mechanism is not specified, it is clear that the Legislature did not intend to limit the section to policies written in the future.
Finally, as respondent appropriately notes, the State Constitution (NY Const, art VII, § 8 [2]) provides authority for the Legislature to protect New Yorkers against sickness, by insurance or otherwise.
The court also finds that regulation 146 represents a rational interpretation of chapter 501. Since the purpose of the legislation was to extend the burden of insuring high-risk New Yorkers to commercial insurers who, until now, have been permitted to pick and choose their customers, it is reasonable to interpret the pooling mechanism as a device which was intended to benefit Empire, the only insurer in the State which was obligated to provide coverage for high-risk insureds.
It is hard to imagine that commercial, for-profit insurance companies which have a greater number of low-risk portfolios would voluntarily contribute to a pool from which insurers with greater risk could withdraw. A pool dependent on voluntary contributions would likely be dry and, therefore, wholly ineffective. The court may not construe a statute so as to produce such an absurd result. (McKinney’s Cons Laws of NY, Book 1, Statutes § 145.) The fact that the statute required Empire to be represented on the Technical Advisory Committee formed to develop the pooling mechanism supports the Superintendent’s interpretation that Empire was intended to participate in the pool. Simple logic supports the interpretation that contributions to the pool were intended to be mandatory rather than voluntary.
REGULATION 145

IMPLEMENTATION OF OPEN ENROLLMENT AND COMMUNITY RATING OF INDIVIDUAL AND SMALL GROUP HEALTH INSURANCE

Unlike regulation 146, interpretation of the challenged *227 sections of regulation 145 does not require any special knowledge of the insurance industry. "[W]here as here, the question is one of pure statutory reading and analysis, dependent only on accurate apprehension of legislative intent, there is little basis to rely upon any special competence or expertise of the administrative agency and its interpretive regulations are, therefore, to be accorded much less weight.” (Matter of New York Life Ins. Co. v State Tax Commn., 80 AD2d 675, 676, supra.)
Petitioner challenges two sections of regulation 145, (1) section 360.4 (c) which requires insurers of small groups also to offer coverage to individual proprietors and groups of two, and (2) section 360.3 (a) (1) (ii) which elaborates on a provision of existing law establishing minimum participation levels among employees in order to qualify for small group coverage.
REGULATION 145 — 11 NYCRR 360.4 (C)
Section 360.4 (c) defines a small group as one covering from 3 to 50 employees or members. Additionally it says that an individual proprietor or group of two must also be considered a small group if the insurer does not offer individual coverage.
Petitioner argues that Insurance Law § 3231 (a), as amended by chapter 501 of the Laws of 1992 defines "small group” as 3 to 50 and that respondent’s extension of the definition of "small group” to cover individual proprietors and groups of two is contrary to the express language of chapter 501 found in section 3233 (a) which says, "[s]uch regulations shall not require any insurer or health maintenance organization subject to this section * * * to enter, continue to conduct, or withdraw from any line of business as a condition of entering, continuing in, or withdrawing from any other line of business.”
The court believes petitioner is correct in arguing that requiring insurers of small groups to offer coverage to individual proprietors and groups of two is contrary to the unambiguous, mandatory directive of Insurance Law § 3233 (a) and exceeds the scope of the delegated authority.
According to affidavits submitted by Empire which has intervened in this proceeding, prior to the enactment of chapter 501 each commercial insurer defined "small group” differently. No standard definition was used in the industry or established by law.
*228 Section 3231 (a) of the statute says that small groups are defined "hereinafter” as groups of 3 to 50. The rules of statutory interpretation require that, "[i]n the construction of a statute, meaning and effect should be given to all its language, if possible, and words are not to be rejected as superfluous when it is practicable to give to each a distinct and separate meaning.” (McKinney’s Cons Laws of NY, Book 1, Statutes § 231.)
Since no language in section 3231 appears to limit the operation of the definition to that section, the ordinary meaning of "hereinafter” — that the definition of small group as a group of 3 to 50 applies throughout chapter 501, should be given effect.
Respondent cites section 3231 (b) of the statute, which states that "[i]ndividual proprietors and groups of two must be classified in the individual or small group rating category by the insurer” as authority for requiring small group insurers to provide coverage to groups of one and two. However, as petitioner urges, this section appears to apply only to the rating of policies, and simply requires insurers who offer insurance to individual proprietors and groups of two to rate them in either the individual or small group category. It does not provide authority for requiring insurers of small groups to extend coverage to individual proprietors and groups of two. Because "an administrative agency may not * * * add * * * a requirement that does not exist under the statute” (Kahal Bnei Emunim & Talmud Torah Bnei Simon Israel v Town of Fallsburg, 78 NY2d 194, 204), the court agrees that the Superintendent exceeded his authority by requiring in section 360.4 (c) of regulation 145 that small group insurers extend coverage to groups of one and two.
REGULATION 145 — 11 NYCRR 360.3 (A) (1) (II)
Under existing law, insurers who write small group policies are permitted to require a minimum level of participation among employees of the group as a condition of offering the coverage. For example, section 4235 (c) of the Insurance Law says that unless 50% of the employees of a group participate, the insurer does not have to offer coverage to the group.
Regulation 145 promulgated pursuant to chapter 501 amends this existing rule and says that if 50% of the employees of the group elect to participate in the small group policy, or in a policy offered by a health maintenance organization, the insurer must offer the group policy.
*229 The court finds that this interpretation exceeds the limit of authority delegated to the Department.
Chapter 501 does not amend section 4235 (c) of the Insurance Law. There is no basis for attributing any intent on the part of the Legislature to alter this substantial protection for commercial insurers in existing law. It is true, as respondent contends, that the regulation is not inconsistent with the Legislature’s goal of making coverage more widely available; however, it is also true that the regulation conflicts with the express statement that commercial insurers should be encouraged to remain in the small group market in pursuit of that goal. Such general statements of legislative intent do not provide unlimited authorization to the Insurance Department to effect substantive changes in existing law.
For the foregoing reasons, the court finds that petitioner’s challenge to regulation 146 is without merit. The regulation as promulgated is neither unconstitutional nor irrational. The court also finds that sections 360.4 (c) and 360.3 (a) (1) (ii) of regulation 145 exceed the scope of authority delegated to the Insurance Department by chapter 501 of the Laws of 1992, and that, therefore, the challenged sections are null and void.