Egan Jr., J.P.
 

 Proceeding pursuant to CPLR article 78 (initiated in this Court pursuant to Tax Law § 2016) to review a determination of respondent Tax Appeals Tribunal denying petitioner’s request for certain refunds of sales and use tax imposed under Tax Law articles 28 and 29.
 

 Petitioner is a regional supermarket chain headquartered in the City of Rochester, Monroe County, which operates retail locations in several states, including approximately 50 locations throughout New York. As part of its business operations, petitioner monitors the retail prices charged by its competitors in order to competitively price its products in accordance with its pricing strategy. Since 1995, petitioner has contracted with RetailData, LLC for the provision of competitive price audits (hereinafter CPAs) or price checks in order to determine how much its competitors charge for certain specifically requested retail products. RetailData collects this raw data and compiles it into a report, according to certain specifications provided by petitioner, that petitioner thereafter uses to inform its pricing strategies. In 2011, the Department of Taxation and Finance conducted an audit of petitioner’s sales and use tax liability for the period between June 2007 and February 2010. Following the audit, the Department determined that petitioner’s purchase of CPAs from RetailData, and the corresponding reports derived therefrom, constituted the purchase of taxable information services (see Tax Law § 1105 [c] [1]) and issued a notice of determination imposing upon petitioner an additional tax amount due of $227,270.01 for the relevant time period. Petitioner thereafter filed a petition in the Division of Tax Appeals challenging the determination and seeking a redetermi-nation and refund of its sales tax liability. Following a hearing, an Administrative Law Judge (hereinafter ALJ) sustained the determination, concluding that the CPAs and written reports produced by RetailData and purchased by petitioner did not fall within the applicable exclusion from the imposition of sales tax because the information purchased was not, among other things, personal and individual in nature to petitioner (see Tax Law § 1105 [c] [1]). Petitioner filed an exception to the ALJ’s determination and, following a hearing, respondent Tax Appeals Tribunal affirmed the ALJ’s determination. Petitioner then commenced this proceeding, seeking to, among other things, annul the Tribunal’s determination.
 

 This Court’s review of the Tribunal’s determination is limited. So long as the Tribunal’s determination is rationally based and is supported by substantial evidence, it must be confirmed, even where a different conclusion is reasonable (see Matter of American Food & Vending Corp. v New York State Tax Appeals Trib., 144 AD3d 1227, 1228 [2016]; Matter of Hwang v Tax Appeals Trib. of the State of N.Y., 105 AD3d 1151, 1152 [2013]). “Where the interpretation of a statute or its application involves knowledge and understanding of underlying operational practices or entails an evaluation of factual data and inferences to be drawn therefrom,” the courts are generally deferential “to the governmental agency charged with responsibility for administration of the statute” (Matter of Colt Indus. v New York City Dept. of Fin., 66 NY2d 466, 470-471 [1985] [internal quotation marks, brackets and citation omitted]); however, if “the question is one of pure statutory reading and analysis, dependent only on accurate apprehension of legislative intent, there is little basis to rely upon any special competence or expertise of the administrative agency and its interpretive regulations are, therefore, to be accorded much less weight” (Matter of New York Life Ins. Co. v State Tax Commn., 80 AD2d 675, 676 [1981], affd 55 NY2d 758 [1981]). The burden is on the taxpayer to establish that the determination being challenged clearly falls within the applicable exclusion (see Matter of 677 New Loudon Corp. v State of N.Y. Tax Appeals Trib., 19 NY3d 1058, 1060 [2012], cert denied 571 US —, 134 S Ct 422 [2013]; Matter of American Food & Vending Corp. v New York State Tax Appeals Trib., 144 AD3d at 1228). “Where the language of a statute is clear and unambiguous, courts must give effect to its plain meaning” (Matter of Charter Dev. Co., L.L.C. v City of Buffalo, 6 NY3d 578, 581 [2006] [internal quotation marks, brackets and citation omitted]); however, in the event of ambiguity, “where, as here, an exclusion rather than an exemption is involved, the statute must be strictly construed in favor of the taxpayer” (Matter of New York Life Ins. Co. v State Tax Commn., 80 AD2d at 676; see Matter of Grace v New York State Tax Commn., 37 NY2d 193, 196 [1975]; Matter of Towne-Oller & Assoc. v State Tax Commn., 120 AD2d 873, 874 n [1986]; Matter of Greco Bros. Amusement Co. v Chu, 113 AD2d 622, 624 [1986];but see Matter of Mobil Oil Corp. v Finance Adm’r of City of N.Y., 58 NY2d 95, 99 [1983]).
 
 [1]
 

 Petitioner contends that the Tribunal erred as a matter of law by determining that its purchase of pricing information from RetailData was not personal and individual in nature and, therefore, not subject to the tax exclusion provided by Tax Law § 1105 (c) (1). As relevant here, Tax Law § 1105 (c) (1) provides that sales tax may be imposed upon the sale of the service of “furnishing . . . information by printed, mimeographed or multigraphed matter or by duplicating written or printed matter in any other manner, including the services of collecting, compiling or analyzing information of any kind or nature and furnishing reports thereof to other persons.” Tax Law § 1105 (c) (1) excludes from sales tax, however, “the furnishing of information which is personal or individual in nature and which is not or may not be substantially incorporated in reports furnished to other persons” (see Westwood Pharms. v Chu, 164 AD2d 462, 465 [1990], lv denied 77 NY2d 807 [1991]; Matter of New York Life Ins. Co. v State Tax Commn., 80 AD2d at 676).
 

 There is no dispute that the CPAs and written reports that RetailData provided to petitioner qualify as an information service, as their primary purpose is to disseminate information (see Matter of Towne-Oller & Assoc. v State Tax Commn., 120 AD2d at 873-874). Accordingly, as the Tribunal properly delineated, the primary issue to be determined is whether the information furnished in these CPAs and written reports “is personal or individual in nature and which is not or may not be substantially incorporated in reports furnished to other persons” (Tax Law § 1105 [c] [1]). Respondent Commissioner of Taxation and Finance argues that, inasmuch as the raw data that served as the basis for RetailData’s CPAs and written reports consisted solely of pricing information obtained from products on the shelves of supermarkets that were open to the public, the information furnished was not personal or individual in nature, as the data clearly derived from a common source or data repository.
 

 While there is no question that the pricing information that RetailData collects on petitioner’s behalf is information that is available to the public, we agree with petitioner that, under the circumstances presented here, such information does not derive from a singular, widely accessible common source or database as that test has previously been applied and commonly understood in determining the applicability of the subject tax exclusion (see Matter of ADP Automotive Claims Servs. v Tax Appeals Trib., 188 AD2d 245, 246-247 [1993], lv denied 82 NY2d 655 [1993] [information derived from database of autopart prices and estimate installation times]; Matter of Rich Prods. Corp. v Chu, 132 AD2d 175 [1987]; Matter of Towne-Oller & Assoc. v State Tax Commn., 120 AD2d at 874 [information derived from tapes from wholesalers and distributors identifying products and stores]; Allstate Ins. Co. v Tax Commn. of State of N.Y., 115 AD2d 831, 831-832 [1985], affd 67 NY2d 999 [1986] [information derived from motor vehicle reports accessible in the Department of Motor Vehicles]). Here, based on its own unique and confidential pricing strategy, petitioner provided RetailData with its collection criteria for the audits to be performed, including the specific stores that it wanted RetailData to audit, the specific pricing information that it wanted RetailData to collect and the frequency with which it wanted these audits to be conducted. Such requests routinely involved RetailData auditing multiple competing supermarkets chains and multiple retail locations within each competing chain.
 
 [2]
 
 RetailData would then physically send data collectors to each individual location to manually record the requested pricing information. To the extent that the pricing information for each of petitioner’s competitors regularly fluctuated accordingly to their own unique pricing strategies, there was no singular preexisting common source or data repository that RetailData could access to timely obtain the specific pricing information that petitioner had requested. The data requested, therefore, was not collected from one general source (see Westwood Pharms. v Chu, 164 AD2d at 466-467).
 

 Significantly, once the raw data or specified pricing information was collected, pursuant to RetailData’s collection methodology, it was maintained as a separate and distinct work component or database for RetailData’s sole use in preparing its written report for petitioner. This information, therefore, was not maintained in a general database that was viewable or for use by any of RetailData’s other clients,
 
 [3]
 
 there is no evidence that any such information ever was shared with other clients and, significantly, the contract between petitioner and RetailData contained a confidentiality provision that expressly prohibited RetailData from providing any such information to third parties. RetailData then analyzed and verified the information through its own propriety software according to specifications set forth by petitioner, and a written report was generated in a customized format pursuant to petitioner’s specifications that was only compatible with petitioner’s propriety price management system.
 
 [4]
 
 At all relevant times throughout the process, therefore, the information furnished to petitioner was uniquely tailored to petitioner’s specifications and was related exclusively to implementation of its confidential pricing strategy. On the record before us, therefore, we find that the information services that petitioner purchased from RetailData were personal or individual in nature and were not substantially incorporated into reports of others such that petitioner’s purchase of these information services should have been excluded from taxation pursuant to Tax Law § 1105 (c) (1) (see Westwood Pharms. v Chu, 164 AD2d at 465-466; Matter of New York Life Ins. Co. v State Tax Commn., 80 AD2d at 677; see also NY St Dept of Taxation & Fin Advisory Op No. TSB-A-17[12]S at 1-3; compare Matter of ADP Automotive Claims Servs. v Tax Appeals Trib., 188 AD2d at 246-248; Matter of Towne-Oller & Assoc. v State Tax Commn., 120 AD2d at 874).
 
 [5]
 
 In our view, to expand the interpretation of Tax Law § 1105 (c) (1) to allow for the Tribunal’s denial of the subject tax exclusion based solely on the fact that the information ultimately furnished derived from a public source would, under the circumstances presented, serve to defeat the purpose of the exclusion (see Matter of New York Life Ins. Co. v State Tax Commn., 80 AD2d at 677-678).
 

 Devine, Clark, Mulvey and Rumsey, JJ., concur.
 

 Adjudged that the determination is annulled, without costs, and petition granted.
 

 [1]
 

 . Although we note that Matter of Mobil Oil Corp. v Finance Adm’r of City of N.Y. (58 NY2d 95, 99 [1983]) indicates that exclusions are to be construed against the taxpayer, to the extent that the proposition in Mobil relies upon precedent that refers to exemptions rather than exclusions (see Matter of Young v Bragalini, 3 NY2d 602, 605-606 [1958]; Matter of Schwartzman, 262 App Div 635, 636 [1941], affd 288 NY 568 [1942]), we find that, as this Court previously held in Matter of Towne-Oller & Assoc. v State Tax Commn. (120 AD2d at 874 n), precedent indicates otherwise.
 

 [2]
 

 . In performing its CPAs, RetailData conducted either directed audits wherein petitioner would provide a specific “key item list” for certain retail products that it wanted RetailData to audit at certain specified retail locations or it would conduct an undirected audit, wherein petitioner would request RetailData to audit a whole category of products (i.e., dairy or cosmetics) at certain specified retail locations.
 

 [3]
 

 . Although it was certainly possible that two of RetailData’s customers could request the same pricing information for a particular item at a particular retail location (compare Matter of Towne-Oller & Assoc. v State Tax Commn., 120 AD2d at 873-874), the evidence clearly indicated that, despite any such overlap, RetailData did not use data it collected for one client to complete a price audit for another client.
 

 [4]
 

 . Specifically, RetailData would analyze the raw data collected and, where appropriate, remove outlying information based upon pricing information that appeared to be historically inconsistent within a specified time frame or was otherwise collected outside the requested time frame.
 

 [5]
 

 . Although the Tribunal did not make an express finding regarding whether the information service that RetailData furnished to petitioner was not and could not be substantially incorporated into reports produced for other persons or entities (see Tax Law § 1105 [c] [1]), we find remittal unnecessary to the extent that our independent factual review of the record reveals ample evidence in support of such finding (see CPLR 7804 [g]).