In the Matter of HAROLD E. MERTZ et al., Doing Business as PUBLISHERS CLEARING HOUSE, Petitioners, v STATE TAX COMMISSION, Respondent.

Third Department, November 10, 1982

APPEARANCES OF COUNSEL

*Morgan, Lewis & Bockius* (*Thomas F. Cunningham* and *J. Howard Marshall, Jr.,* of counsel), for petitioners.

*Robert Abrams, Attorney-General* (*Wayne L. Benjamin* of counsel), for respondent.

OPINION OF THE COURT

CASEY, J.

Petitioners are the general partners of Publishers Clearing House, a New York limited partnership engaged in the business of selling magazine subscriptions by direct mail solicitation throughout the United States and Canada. To facilitate this direct mail marketing, mailing lists, in the form of magnetic computer tapes, are obtained from companies that generate lists of names as an incident of their business and from companies that are engaged in the

business of compiling mailing lists from public records. The mailing lists are obtained on the condition that they may be used only in connection with a single mailing, after which they are returned to the owner. The partnership employed L. E. Turner & Company, a New York corporation, as its exclusive broker to obtain mailing lists. Included in the purchase price paid to the broker was a 25% markup as the broker's fee.

The New York State Sales Tax Bureau issued a notice of determination and demand for the payment of sales and use taxes due for the period September 1, 1970 to August 31, 1973, based upon its finding that the purchase price paid by the partnership for the mailing lists, including the broker's fees, was subject to sales and use tax (Tax Law, art 11). Following a formal hearing held at petitioners' request, the State Tax Commission concluded that the entire purchase price of the mailing lists, including the broker's fees, was taxable. This proceeding ensued.

Relying upon *Matter of Drey Co. v State Tax Comm.* (67 AD2d 1055, mot for lv to app den 47 NY2d 708), the Tax Commission ruled that the mailing list transactions constituted both the sale of tangible personal property, taxable pursuant to subdivision (a) of section 1105 of the Tax Law, and the sale of information, taxable pursuant to section 1105 (subd [c], par [1]) of the Tax Law. In so doing, however, the commission misconstrued our holding in *Drey Co.* There the mailing list transactions fell into two categories: those in which the lists were transmitted via magnetic computer tape and those in which the lists were transmitted on gummed labels. As to the transactions in the first category, the purchasers were required to process the tapes in order to generate the labels or inserts necessary for the mailings, while those who purchased the lists on gummed labels simply attached the labels to the mailings. The transactions involving the gummed labels clearly constituted taxable sales of tangible personal property since the gummed labels themselves, rather than just the data contained thereon, were directly used in the mailings. The computer tapes, however, were not directly used in the mailings. Instead, the data on the tapes was read and only that data was used in the mailings. The

tapes, which were the only tangible personal property involved, were merely the medium by which the information that was the essence of the transaction was transmitted. The tapes served no other function in the transactions and, therefore, there was no sale of tangible personal property. Thus, we conclude that our decision in *Drey Co.* (*supra*) should be construed as holding that the transactions involving computer tapes constituted sales of information, taxable pursuant to section 1105 (subd [c], par [1]) of the Tax Law, while those involving gummed labels constituted sales of tangible personal property, taxable pursuant to subdivision (a) of section 1105 of the Tax Law. While the distinction was not important in *Drey Co.*, since the main issue was simply whether the transactions were taxable sales, the distinction is important here, since other issues are raised.

All of the transactions at issue here involved magnetic computer tapes and, as discussed above, *Drey Co.* (*supra*) compels the conclusion that the transactions constituted taxable sales of information. Petitioners' arguments to the contrary were, for the most part, considered and rejected in *Drey Co.* Their contention here that they purchased mere access to an audience, rather than information, is not supported by the record. The evidence establishes that in addition to the mailing lists, the seller provided information about the makeup of the lists, which was very important to petitioners in employing their direct marketing techniques.

Petitioners contend that taxing their purchase of mailing lists while excluding such advertising media as billboard space, radio broadcast time and newspaper advertising space, amounts to a denial of equal protection. We disagree. Since the mailing list data and the information about the makeup of the lists were processed and employed in the development of direct marketing techniques through personalized mail solicitation, there exists a rational basis for distinguishing petitioners from purchasers of traditional advertising media. Petitioners have failed to carry their heavy burden of showing that the different treatment constitutes invidious discrimination (see *Matter of Catapano Co. v New York City Fin. Admin.*, 40 NY2d 1074).

Petitioners contend that, pursuant to section 1119 (subd [a], par [4]) of the Tax Law, the purchase price of the mailing lists should be taxed only to the extent of the percentage of New York names and addresses on the lists. Section 1119 (subd [a], par [4]), however, applies only to sales of tangible personal property, purchased for other than resale, which is subject to certain limited uses in New York and then is shipped out of the State for use outside of New York. As discussed above, the transactions at issue here involved the sale of information, not tangible personal property, and thus section 1119 (subd [a], par [4]) is inapplicable. Nor is subdivision (d) of section 1115 of the Tax Law of any avail to petitioners since no tangible personal property on which the services were performed was delivered to the purchaser (petitioners' partnership) outside the State, as required by that exemption.

Petitioners' final argument, however, has merit. Section 1105 (subd [c], par [1]) specifically excludes from taxation receipts from the sale of the "services of advertising or other agents, or other persons acting in a representative capacity". This exclusion is applicable only to sales of information, such as the transactions at issue here. The record establishes that despite the common ownership of L. E. Turner & Company and petitioners' partnership, L. E. Turner & Company acted solely in a representative capacity, as the partnership's exclusive broker in obtaining the mailing lists. Accordingly, that portion of the purchase price paid by the partnership which represents the broker's fees of L. E. Turner & Company must be excluded from taxable receipts (Tax Law, § 1105, subd [c], par [1]), and the tax due must be recomputed.

The petition should be granted and the determination annulled insofar as it includes in taxable receipts the amount which represents the broker's fees paid to L. E. Turner & Company, and the matter remitted to the State Tax Commission for further proceedings not inconsistent herewith, and, as so modified, confirmed, without costs.

KANE, J. P., MAIN, WEISS and LEVINE, JJ., concur.

Petition granted and determination annulled insofar as it includes in taxable receipts the amount which represents

the broker's fees paid to L. E. Turner & Company, and matter remitted to the State Tax Commission for further proceedings not inconsistent herewith, and, as so modified, confirmed, without costs.