In the Matter of FINSERV COMPUTER CORPORATION, Respondent, v JAMES H. TULLY et al., Constituting the New York State Tax Commission, Appellants.

Third Department, June 16, 1983

APPEARANCES OF COUNSEL

*Robert Abrams,* Attorney-General (*Francis V. Dow* and *Jeremiah Jochnowitz,* of counsel), for appellants.

*Roemer & Featherstonhaugh* (*E. Guy Roemer* of counsel), for respondent.

**OPINION OF THE COURT**

LEVINE, J.

Approximately 2% or 3% of petitioner's business consists of reproducing the computerized records of its customers onto microfiche or microfilm. Petitioner described this

process as follows. After it receives a computer tape from a customer, it may have to perform several procedures in order to determine the tape's physical characteristics and the format of the information on the tape. Then, if the customer's tape is written in a computer code which is different from the code used by petitioner, the tape must be converted or translated to petitioner's code; this process produces a new tape, compatible with petitioner's equipment. Next, petitioner adds a title row and index information for each piece of microfiche or microfilm. Finally, the tape is processed into words and numbers on microfiche or microfilm, which is then delivered to the customer. On September 20, 1979, respondent State Tax Commission issued a notice of determination assessing a sales and use tax against petitioner for the period June 1, 1975 through February 28, 1979, on the basis that the exchanges of payment for the microfiche and microfilm constituted sales of tangible personal property subject to tax under subdivision (a) of section 1105 of the Tax Law. Following a hearing, respondent upheld the assessment. Petitioner then commenced the instant proceeding, and Special Term annulled the determination, holding that the above-described transactions were excluded from taxation pursuant to section 1105 (subd [c], par [1]) of the Tax Law (115 Misc 2d 620). This appeal ensued.

Special Term upheld petitioner's contention that the sales at issue are primarily services for the "furnishing of information" (Tax Law, § 1105, subd [c], par [1]) and, therefore, since the information provided concededly is personal or individual in nature and may not be incorporated into reports furnished to other persons, no sales tax is applicable (Tax Law, § 1105, subd [c], par [1]). Section 1105 (subd [c], par [1]) of the Tax Law and its regulations (20 NYCRR 527.3 [2]) describe "furnishing of information" as "collecting, compiling or analyzing information of any kind or nature and furnishing reports thereof". Respondent's determination concluded that "[p]etitioner did not furnish its customers with any information its customers did not previously have. Therefore, petitioner's sales were not of information services but rather the rearranging of its customers' information onto a different medium". Thus,

respondent distinguished between (1) integrating or recasting the information received from the customer so that the customer is given back some new information, or some new significant intelligence, concerning the data furnished, and (2) converting the information received from the customer from one form or medium to another, without interpreting or recasting it, so that the form of the information changes but not the intelligence contained therein. Respondent's determination considered only the first of these two alternatives (i.e., providing new information or intelligence) to be "furnishing of information" within section 1105 (subd [c], par [1]) of the Tax Law (see, also, Technical Services Bureau Bulletin No. 1978-1 [S] [CCH, 2 NY Tax Rep, par 66-001]; Technical Services Bureau Memorandum — 1981 [3] S). Respondent's interpretation seems to be consistent with the statutory language "collecting, compiling or analyzing". One cannot collect, compile or analyze the data of a customer without in some way significantly adding to the sum of knowledge of the customer with respect to that data. In thus distinguishing between furnishing new information to the customer and merely changing information already possessed from one format to another, the commissioner rationally interpreted the statute and that interpretation, therefore, must be upheld (see *Matter of Howard v Wyman,* 28 NY2d 434, 438).

The only remaining question is whether there is substantial evidence to support respondent's finding that petitioner's services under consideration are primarily the rearranging or conversion of information from one format to another. Petitioner's president testified that petitioner does not collect information. It also appears from the record that in providing this reproduction service petitioner likewise does not compile or analyze the customer's information; there is no evidence that the process includes any assembling and collating of information, nor is the information broken down into separate parts so as to examine their nature or relationships. Furthermore, petitioner's president testified that its customers have equipment to produce paper printouts from their tapes, but that they bring them to petitioner because they prefer prints on

microfiche and do not have the equipment to produce microfiche. From this statement it may certainly be inferred that the customers' data has already been processed (i.e., collected, compiled and/or analyzed) before the customers bring their computer tapes to petitioner. The testimony also made clear that most of the procedures which petitioner performs are done solely for petitioner's own internal purposes, i.e., so that petitioner can use its equipment to produce the microfiche. Petitioner's president stressed that most of the tapes it receives from customers are in a different code (ASCII) from the code its computers and equipment use (EBCDIC) and that, therefore, a code translation is usually required before it can work with these tapes. Obviously, however, such a code translation does not in any way change the informational content of a tape. As for petitioner's adding title rows and indexing, petitioner's president explained that the information contained in the title row on each fiche is either on the customer's tape or on a separate information sheet provided by the customer. Indexing is used to describe the information contained on any particular fiche, similar to a table of contents for a book. The title row and indexing thus are merely aids for users of the fiche, and any new information in them would be negligible. It appears, therefore, that there is substantial evidence to support respondent's finding that petitioner's services consist primarily of merely rearranging the customer's information and changing it into a readable form. It is well settled that the burden of overcoming a tax assessment rests with the taxpayer, and that if there are any facts or reasonable inferences from the facts to substantiate a determination of the State Tax Commission, we must confirm it (*Matter of Liberman v Gallman,* 41 NY2d 774, 777). Additionally, we find no merit to petitioner's argument that respondent should be estopped from imposing the subject tax because a prior 1974 audit did not determine such sales to be subject to tax. An administrative body may correct its oversight or erroneous interpretation of the law (*Matter of Liberty Coaches v State Tax Comm.,* 79 AD2d 775). Finally, since petitioner's sales to its customers are thus sales of tangible personal property subject to tax under subdivision (a) of

section 1105 of the Tax Law, petitioner's purchases of microfilm and microfiche to be resold in connection with this service would constitute purchases for resale which are not subject to sales tax (see 20 NYCRR 526.6 [c] [1]).

The judgment should be reversed, on the law and the facts, with costs, the determination confirmed, and the petition dismissed.

MAHONEY, P. J., MAIN, MIKOLL and YESAWICH, JR., JJ., concur.

Judgment reversed, on the law and the facts, with costs, determination confirmed, and petition dismissed.