■ ALLSTATE INSURANCE COMPANY et al., Respondents, v TAX COMMISSION OF THE STATE OF NEW YORK, Appellant.— Levine, J. Appeal from an order of the Supreme Court at Special Term (Kahn, J.), entered March 13, 1985 in Albany County, which, *inter alia,* granted plaintiffs' motion for summary judgment.

Plaintiff Hooper Holmes, Inc. (Hooper Holmes) is engaged, *inter alia,* in the business of obtaining motor vehicle reports from the Department of Motor Vehicles (DMV) on behalf of various automobile liability insurance carriers, including plaintiff Allstate Insurance Company (Allstate). These reports (MVRs) are compiled by DMV from license applications and reports of drivers' accidents and traffic infractions filed with DMV, and thus contain information useful to liability carriers such as Allstate in determining whether to accept a particular driver as an insurable risk. Plaintiffs have described the procedures employed for obtaining the MVRs from DMV and distributing them to clients as follows: Hooper Holmes receives requests from various insurer clients as to the MVR of named motorists, collects them on a spool of magnetic tape and then physically delivers the tape to DMV. DMV feeds the tape into its computer system. The following day, DMV delivers to Hooper Holmes either a printout of the requested

MVRs or a magnetic tape containing them. For most of its insurance company clients, Hooper Holmes converts the DMV-supplied tape into hard copy at one of its offices and then delivers the printed MVRs to its clients by messenger. In the case of Allstate, however, the data on the requested MVRs are generally transmitted to Hooper Holmes' terminal located at Allstate's Farmingville, Suffolk County, offices where a print-out is made by a Hooper Holmes' employee and then delivered to Allstate. Hooper Holmes charges Allstate an amount per MVR supplied covering its cost of obtaining the MVR from DMV and a service fee.

On April 29, 1981, the Department of Taxation and Finance issued a notice of determination to Hooper Holmes for its failure to collect sales taxes on the foregoing transactions with Allstate during the period December 1, 1977 through November 30, 1980. On June 11, 1984, Hooper Holmes filed a petition with defendant, the State Tax Commission (Commission), to cancel the notice of determination.

Without awaiting the resolution of Hooper Holmes' petition for cancellation of the determination of sales tax liability, Hooper Holmes and Allstate brought the instant action seeking a judgment declaring that no sales tax applies to Hooper Holmes' procurement and furnishing of MVRs to Allstate and enjoining the collection of the tax. Plaintiffs subsequently moved for summary judgment and the Commission cross-moved for summary judgment dismissing the complaint on the grounds that (1) the transactions were taxable as a sale of the service of furnishing information (Tax Law § 1105 [c] [1]) or the sale of tangible personal property (Tax Law § 1105 [a]), and (2) the controversy was inappropriate for declaratory relief and plaintiffs have failed to exhaust their administrative remedies in the proceeding pending before the Commission. Special Term granted plaintiffs' motion for summary judgment and denied the Commission's cross motion. This appeal by the Commission ensued.

The order should be reversed. In our view, the instant case does not fall within any of the exceptions to the general rule that a declaratory judgment action is an inappropriate vehicle for challenging a tax assessment determination where the plaintiff has failed to exhaust its administrative remedies (Slater v Gallman, 38 NY2d 1, 3-4), particularly when the administrative process has already been commenced (W. T. Wang, Inc. v New York State Dept. of Taxation & Fin., 88 AD2d 825, 826, affd 58 NY2d 1021).

Although Special Term was correct in identifying the dis-

positive issue here as that of the taxability of the transactions between Hooper Holmes and Allstate as a sale of the service of furnishing information (Tax Law § 1105 [c] [1]), we disagree with Special Term's conclusion that the issue is one of pure statutory analysis as to whether the tax applies. In defining the service the sale of which is taxable, section 1105 (c) (1) provides in pertinent part as follows: "The furnishing of information by printed * * * matter or by duplicating written or printed matter *in any other manner,* including the services of collecting, compiling or analyzing information of any kind or nature and furnishing reports thereof * * * but excluding the furnishing of information which is personal or individual in nature" (emphasis supplied). Special Term read the foregoing provision as making tax liability dependent, as a matter of law, upon the vendor's having collected *and* compiled the information sold. Since admittedly, DMV (the sale by whom was exempt [Tax Law § 1116 (a) (1)]) and not Hooper Holmes initially received and then compiled the information in the MVRs, Special Term ruled that a pure issue of law was presented as to the tax's applicability and that, therefore, declaratory relief was appropriate. We disagree with Special Term's analysis of the statute. The words in the phrase "including the services of collecting, compiling or analyzing information" are not used as words of limitation in section 1105 (c) (1). Nothing in that section precludes its application to the situation presented here, where the information was collected from a single source. In this respect, the instant case is not unlike cases involving the taxation of the sale of mailing lists *(see, Matter of Mertz v State Tax Commn.,* 89 AD2d 396; *Names in The News v New York State Tax Commn.,* 75 AD2d 145; *Matter of Drey Co. v State Tax Commn.,* 67 AD2d 1055, *lv denied* 47 NY2d 708), in none of which did the issue turn on whether the vendor compiled the lists or acquired it in toto from another primary source. Additionally, we have upheld the imposition of a sales tax upon the sale of printouts of export and import information, merely extracted by computer from trade newspapers, although the sales of the newspapers (the primary source of the information) was also tax exempt *(Matter of Twin Coast Newspapers v State Tax Commn.,* 101 AD2d 977, *appeal dismissed* 64 NY2d 874).

Nor is the foregoing inconsistent with our decision in *Matter of Finserv Computer Corp. v Tully* (94 AD2d 197, *affd* 61 NY2d 947). There we held that the vendor was not selling information services, but merely recasting from one format to another

information the vendee had already possessed. Here, it is undeniable that Allstate acquired information from Hooper Holmes that was both valuable and new.

We are likewise unpersuaded by the suggestion that the sales in question were exempt because the information sold was personal or individual in nature. This exclusion (Tax Law § 1105 [c] [1]) refers to uniquely personal information and does not apply to information filed with a governmental agency as a public record to which there is unlimited public access (see, Matter of Twin Coast Newspapers v State Tax Commn., supra; cf. Matter of New York Life Ins. Co. v State Tax Commn., 80 AD2d 675, affd 55 NY2d 758).

From our review of the record, we have concluded that whether the transactions under review are taxable sales of the furnishing of information cannot be decided as a pure matter of law but may actually turn on applying the statutory language to as yet unresolved issues of fact concerning the relationship between Hooper Holmes and Allstate and also unresolved questions as to whether any portion of Hooper Holmes' receipts should be deductible as the sale of "services of * * * persons acting in a representative capacity" (Tax Law § 1105 [c] [1]). The remedy of a declaratory judgment is only applicable "where a constitutional question is involved or the legality or meaning of a statute is in question *and no question of fact is involved" (Dunn & Bradstreet v City of New York*, 276 NY 198, 206) (emphasis supplied).

Order reversed, on the law, with costs, motion denied, cross motion granted and summary judgment awarded to defendant dismissing the complaint. Mahoney, P. J., Kane, Casey, Weiss and Levine, JJ., concur. [127 Misc 2d 300.]