■ In the Matter of DENTAL SOCIETY OF THE STATE OF NEW YORK, Appellant, v NEW YORK STATE TAX COMMISSION, Respondent.—Kane, J. P. Appeal from that part of a judgment of the Supreme Court (Prior, Jr., J.), entered December 23, 1987 in Albany County, which dismissed petitioner's application, in a proceeding pursuant to CPLR article 78, to, *inter alia,* declare certain orthodontic devices exempt from sales and use taxes under Tax Law § 1115 (a) (3) and (4).

In 1986, petitioner, a not-for-profit State-wide organization for licensed dentists, requested a declaratory ruling from respondent on the taxability of the sale to dentists of orthodontic space maintainers, retainers, positioners and habit-breaking appliances. Petitioner claimed that the devices were entitled to the exemption from sales and use taxes provided for by Tax Law § 1115 (a) (3) and (4). On February 10, 1987, respondent issued Declaratory Ruling 87-01, in which space maintainers were found exempt under Tax Law § 1115 (a) (4). The remaining devices, however, were denied tax-exempt sta-

tus. Petitioner then commenced this CPLR article 78 proceeding seeking, *inter alia,* a declaration that the remaining devices are exempt from taxation pursuant to Tax Law § 1115 (a) (3) and (4). Supreme Court upheld respondent's determination and dismissed the petition. Petitioner has appealed.

We affirm. Tax Law § 1115 (a) (4) provides for an exemption from sales and use taxes for "artificial devices and component parts thereof purchased to correct or alleviate physical incapacity in human beings". Respondent's regulations interpreting this statute require that a device, before it can qualify as an artificial device, "must either completely or partially replace a missing body part or the function of a permanently inoperative or permanently malfunctioning body part and must be primarily and customarily used for such purposes" (20 NYCRR 528.5 [b] [1]). The devices in question in this case were denied tax-exempt status because respondent determined that they did not satisfy the requirements of 20 NYCRR 528.5 (b) (1).

Petitioner initially argues that the requirement in 20 NYCRR 528.5 (b) (1) that the device replace the functioning of a permanently inoperative or malfunctioning body part is contrary to Tax Law § 1115 (a) (4) since the statute does not specifically require that the physical incapacity which the devices correct or alleviate be permanent. It is true that an agency may not create a rule out of harmony with a statute *(Matter of Harbolic v Berger,* 43 NY2d 102, 109). However, the construction given the statute by the agency "will be upheld if not irrational or irresponsible" *(Matter of John P. v Whalen,* 54 NY2d 89, 95). To determine whether a regulation is contrary to a statute, it is necessary to look at the statute's legislative history *(Matter of Harbolic v Berger, supra,* at 107). Here, the legislative history does not expressly address the "permanency" requirement. However, listed as examples of exempt devices are hearing aids, prostheses, eyeglasses and equipment such as iron lungs, wheelchairs and dialysis machines *(see,* Assembly mem, 1976 Legis Ann, at 343). These examples all suggest serious and permanent incapacities. In our view, since the Legislature did not define or set specific limitations on the definition of "physical incapacity" under Tax Law § 1115 (a) (4), respondent's interpretation of the statute through 20 NYCRR 528.5 is not irrational or unreasonable *(cf., Matter of Jones v Berman,* 37 NY2d 42, 52-53).

Our conclusion is further supported by the requirement that petitioner was required to show not only that its interpretation of the law was plausible, but also that its interpretation

was the only reasonable construction available *(see, Dental Socy. v New York State Tax Commn.,* 110 AD2d 988, 989, *affd* 66 NY2d 939). Furthermore, statutes creating tax exemptions are to be strictly and narrowly construed and the burden of proving entitlement to an exemption rests with the taxpayer *(supra).*

Petitioner claims that respondent's decision was based on a finding that the questioned devices were not used on a permanent basis. It is true that neither Tax Law § 1115 (a) (4) nor 20 NYCRR 528.5 requires that the devices be *used* permanently. However, that was not the basis for respondent's decision. While respondent did discuss temporary uses, it actually based its decision on its conclusion that the devices did not "completely or partially replace a missing body part or the function of a permanently inoperative or malfunctioning *[sic]* body part".

Petitioner now also claims that the devices are in fact used to correct permanently malfunctioning body parts and submits a dentist's affidavit in support. This information, however, was not given to respondent at the time of its decision. Actually, petitioner informed respondent that the devices in question fit within the tax exemption *except* for the regulation's requirement of a permanent malfunction. Petitioner, therefore, failed to meet its heavy burden of establishing that its interpretation of the statute was the only reasonable one.

Petitioner also claims that respondent's decision was inconsistent with prior decisions as well as internally inconsistent. The general rule is that an agency cannot render inconsistent decisions without explaining its reasons *(see, Matter of Martin [Troy Publ. Co.—Roberts],* 70 NY2d 679, 681). Petitioner claims that because a tax exemption was previously granted for hernia devices and hydraulic lifts, respondent's present ruling is inconsistent because those devices are only used temporarily. However, this claim was made by petitioner's attorney with no medical verification being provided.

As to petitioner's claim that respondent's decision was internally inconsistent, petitioner argues that space maintainers, which were found exempt, are used both permanently and temporarily and so are the remaining devices not found exempt. However, the evidence established that only space maintainers were commonly used on a permanently malfunctioning body part. As respondent stated, space maintainers were "primarily and customarily used" to replace missing teeth. Respondent therefore adequately explained its grant of

an exemption to the space maintainers and not the remaining devices.

Finally, petitioner argues that the devices at issue are exempt under Tax Law § 1115 (a) (3). Respondent rejected this argument. Under this statute, medical equipment used to correct or alleviate a physical incapacity is exempt unless it is purchased at retail for use in performing medical and similar services for compensation. Here again, however, petitioner failed to meet its burden of proving entitlement to the exemption. A retail sale does not include the sale of property that is to be resold or which is a physical component of tangible personal property (Tax Law § 1101 [b] [4] [i] [A]). Petitioner argues that there was no retail sale because the devices are made in a laboratory and then resold to the patient by the dentist. However, at the time of respondent's decision, no evidence was presented to support this assertion. Additionally, the fact that the cost of a device may be factored into charges to a patient does not establish that the patient was paying for the device and not the services (see, Celestial Food of Massapequa Corp. v New York State Tax Commn., 63 NY2d 1020, 1022). Respondent's decision was therefore reasonable.

Judgment affirmed, without costs. Kane, J. P., Casey, Weiss, Levine and Mercure, JJ., concur.