In the Matter of SCOTSMEN PRESS, INC., Petitioner, v STATE OF NEW YORK TAX APPEALS TRIBUNAL et al., Respondents.

Third Department, May 2, 1991

APPEARANCES OF COUNSEL

*Lombardi, Devorsetz, Stinziano & Smith (Bruce E. Wood* of counsel), for petitioner.

*Robert Abrams, Attorney-General (Julie S. Mereson* of counsel), for respondents.

OPINION OF THE COURT

HARVEY, J.

The facts are relatively undisputed. Petitioner is a commercial printer and publisher of weekly pennysavers which are distributed free of charge to consumers within a particular geographic area. Along with advertisements, the pennysavers also contain community service notices and some articles of general community interest. After an audit of petitioner for the period from June 1, 1978 through August 31, 1983, the

Audit Division of respondent Department of Taxation and Finance determined that petitioner failed to pay sales and use taxes on its purchases of the paper and ink used to print the pennysavers, and issued an assessment of $79,698.92 plus interest. Petitioner challenged the tax assessment, alleging principally that its purchases of ink and paper were exempt from sales and use taxes under Tax Law § 1115 (a) (20) because petitioner allegedly published a "shopping paper" within the meaning of Tax Law § 1115 (i). In order to be considered a tax-exempt shopping paper, however, a publication must meet several criteria including the requirement that advertisements in the publication "shall not exceed [90%] of the printed area of each issue" (Tax Law § 1115 [i] [C]). The Department determined that petitioner did not qualify for the exemption because its pennysavers contained too much advertising to qualify as shopping papers.

At the hearing, the Department explained that it used an approach called the "subtractive method" in determining how much of petitioner's publication was devoted to advertising. The parties agreed that there were 168 square inches of printable area per page. From that total amount the Department subtracted the nonadvertising items (which included public service announcements, editorials, community announcements, first page banner headings and a portion of the blank space)* and concluded that petitioner did not meet the statutory 90% limitation. In contrast, petitioner advocated utilization of an "additive method", which involved calculating the total square inches of advertising area and comparing it to the total printed area per page. Unlike the Department, petitioner counted nonpaying banners and headings, petitioner's own advertisements (house ads) and all blank space on the page as nonadvertising space. The Department's auditor pointed out, however, that because petitioner's analysis did not include blank space in its calculations, the sum of the advertising space and nonadvertising printed space did not equal the agreed-upon total printed area of 168 square inches. Thereafter, the Administrative Law Judge issued a determination upholding the tax assessment. Petitioner filed an exception with respondent Tax Appeals Tribunal, which ultimately affirmed the Administrative Law Judge's determination and

---

* The Department allocated blank space or space between columns to either advertisement or nonadvertisement depending on where it was placed on the page.

sustained the tax assessment. Petitioner paid the tax assessment but then commenced this proceeding in this court seeking annulment of the Tribunal's determination, cancellation of the tax assessments and a refund of petitioner's payment of the tax due.

■ Initially, we disagree with petitioner that the Department utilized an irrational methodology in arriving at its conclusion that petitioner's pennysavers contained too much advertising to qualify as a tax-exempt shopping paper. Contrary to petitioner's arguments, the Department's use of the subtractive method is rational and consistent with the legislative intent that 10% of a qualifying pennysaver contain news of community interest rather than just simply intending a maximum of 90% advertisements (see, Governor's mem, 1977 McKinney's Session Laws of NY, at 2532-2533). Since acceptance of petitioner's argument that the Legislature only intended to limit advertisements to 90% without concern for the content of the remaining 10% could result in less than 10% of the paper being devoted to community purposes, we cannot agree that petitioner's approach is the more logical of the two. It is well settled that statutes creating tax exemptions are to be strictly construed and it is the taxpayer's burden to demonstrate that its interpretation of the law is the only reasonable one (see, Matter of Blue Spruce Farms v New York State Tax Commn., 99 AD2d 867, affd 64 NY2d 682).

■ Next, it is our view that the Department's interpretation of what is meant by "advertisements" for purposes of calculating the 90% limitation is also rational and is entitled to our deference. Advertisements are defined as "a public notice or announcement, usually paid for, as of things for sale, needs, etc." (Websters New World Dictionary of the American Language 20 [2d ed 1978] [emphasis supplied]) or "the action of making generally known; a calling to the attention of the public" (Random House Dictionary of the English Language 29 [2d ed, unabridged 1987]). Accordingly, actual payment is not, as petitioner seems to allege, an absolute requisite for language to qualify as an advertisement. Consequently, it was rational for the Department to include nonpaid banners and petitioner's house ads as advertisements since they were public announcements used to attract the public's attention. As for the Department's decision to apportion part of the blank space on the page to advertisements, this, too, is rational in light of the legislative intent that 10% of the pennysaver be specifically devoted to newspaper articles and

not simply consist of blank space with perhaps a few lines of community news. It must be remembered that an administrative agency's interpretation of a statute should be accorded great deference where, as in the case of Tax Law § 1115 (i) (see, Governor's mem, 1977 McKinney's Session Laws of NY, at 2533), the agency assisted in drafting the statute (see, Matter of Judd v Constantine, 153 AD2d 270, 273).

■ Finally, we disagree with petitioner's alternative contention that, if it does not qualify as a shopping paper, then it qualifies as a "newspaper" so that its use of paper and ink are exempt from certain sales and use taxes for that reason (see, Tax Law § 1115 [a] [5]; § 1118 [5]; 20 NYCRR 528.6). This court has held in the past that publications and pennysavers such as petitioner's which do not contain news articles or expressions of opinion are generally not newspapers within the meaning of the Tax Law (see, Matter of Twin Coast Newspapers v State Tax Commn., 101 AD2d 977, appeal dismissed 64 NY2d 874; Matter of G & B Publ. Co. v Department of Taxation & Fin., 57 AD2d 18, 20, lv denied 42 NY2d 807). Significantly, in support of the conclusion that petitioner's publication does not qualify as a newspaper, petitioner's own general manager testified at the hearing that the general interest articles in the paper were only "fill" and were placed in the pennysaver after the layout of the advertisements.

Petitioner's remaining arguments are rejected as either meritless or not properly before us because they were not raised at the administrative level (see, Matter of Rauer v State Univ., 159 AD2d 835, 836).

MAHONEY, P. J., MIKOLL, LEVINE and CREW III, JJ., concur.

Determination confirmed, and petition dismissed, without costs.