In the Matter of STANLEY HENRY, Individually and on Behalf of CHANRY COMMUNICATIONS, LTD., Petitioner, v JAMES W. WETZLER, as Commissioner of the New York State Department of Taxation and Finance, et al., Respondents.

Third Department, October 22, 1992

**APPEARANCES OF COUNSEL**

*Thomas P. Schulz,* Farmingdale, for petitioner.

*Robert Abrams, Attorney-General (Julie S. Mereson* and *Wayne L. Benjamin* of counsel), Albany, for James W. Wetzler, respondent.

## OPINION OF THE COURT

CREW III, J.

The essential facts have been stipulated. At all relevant times, petitioner was an officer of Chanry Communications, Ltd. which owns, publishes and distributes 17 separate free-circulation "pennysaver" newspapers throughout the Long Island region. Chanry is in the business of soliciting and receiving advertisements from various advertisers which, in turn, require that their ads appear in the pennysavers and that the pennysavers be distributed within specific geographic areas. The advertisers dictate the specific type and format of the ad placed in the pennysaver, and the rates charged by Chanry are based upon the size of the ad and the geographic area in which it is circulated. The pennysavers are printed and published by Chanry and then distributed, pursuant to an implied contract between Chanry and the advertisers, to the public free of charge. The distribution of the pennysavers by Chanry to the general public is not subject to sales or use tax. In addition to the paid advertisements, the pennysavers contain, *inter alia,* news and feature stories, editorials and reader polls over which Chanry maintains complete editorial control.

Between 1982 and 1985, Chanry purchased approximately $1 million in machinery and equipment for use "directly and predominantly" in the production of the pennysavers. Following an audit for the period October 1, 1982 through February 28, 1985, the Department of Taxation and Finance issued notices of determination and demand for payment of sales and use taxes due in the amount of $246,719.59, plus interest and penalties, to petitioner and Chanry.[1] In so doing, the Department disallowed a manufacturing exemption claimed by petitioner under Tax Law § 1115 (a) (12), which exempts from sales and use taxes certain machinery or equipment used or consumed "directly and predominantly in the production of tangible personal property * * * *for sale"* (emphasis supplied).

The parties consented to having the controversy determined on submissions, without a hearing, and the matter was placed before an Administrative Law Judge (hereinafter ALJ) of the

---

1. Although petitioner contests these determinations, the amount of the tax is not in dispute.

Division of Tax Appeals. The ALJ determined that petitioner was not entitled to the claimed manufacturing exemption under Tax Law § 1115 (a) (12), nor was petitioner entitled to the benefit of Tax Law § 1115 (c), which exempts from sales tax, *inter alia,* electricity used or consumed "directly and exclusively in the production of tangible personal property * * * *for sale"* (emphasis supplied). Petitioner filed a notice of exception. Following oral argument respondent Tax Appeals Tribunal, *inter alia,* denied petitioner's exception and sustained the ALJ's determination and notices of determination. Petitioner thereafter commenced this CPLR article 78 proceeding to review the Tribunal's determination.

"It is well settled that statutes creating tax exemptions are to be strictly construed and it is the taxpayer's burden to demonstrate that its interpretation of the law is the only reasonable one" *(Matter of Scotsmen Press v State of New York Tax Appeals Tribunal,* 165 AD2d 630, 633; *see, Matter of Dental Socy. v New York State Tax Commn.,* 148 AD2d 791, 792-793). Briefly, Tax Law § 1105 (a) imposes sales tax upon "receipts from every retail sale of tangible personal property, except as otherwise provided in [Tax Law article 28]"; a similar tax is imposed upon the receipts from every sale of, *inter alia,* electricity in accordance with Tax Law § 1105 (b). In addition, Tax Law § 1110 imposes a compensating use tax upon tangible personal property. Tax Law § 1115 exempts from the taxes imposed by Tax Law §§ 1105 and 1110, *inter alia,* "[r]eceipts from * * * [m]achinery or equipment for use or consumption directly and predominantly in the production of tangible personal property * * * for sale" (Tax Law § 1115 [a] [12]) and "electricity * * * for use or consumption directly and exclusively in the production of tangible personal property * * * for sale" (Tax Law § 1115 [c]). "Sale", in turn, is defined as "[a]ny transfer of title or possession or both * * * in any manner or by any means whatsoever for a consideration" (Tax Law § 1101 [b] [5]). Respondent Commissioner of Taxation and Finance has stipulated that the pennysavers constitute "tangible personal property" and, further, that the machinery and equipment purchased by Chanry during the audit period was "for use directly and predominantly in the production of the pennysavers".[2] Thus, petitioner's entitle-

---

2. Although not included in the stipulation, the Commissioner does not appear to contest that the electricity was also for use or consumption "directly and exclusively" in the production of the pennysavers.

ment to the exemption turns on whether the pennysavers are tangible personal property for sale within the meaning of Tax Law § 1115 (a) (12) and § 1115 (c).

Petitioner contends that the required transfer of title or possession for consideration may be found either in the "sale" of the pennysavers by Chanry to its customers, i.e., the advertisers, followed by Chanry's distribution of the pennysavers on behalf of the advertisers to the general public in specifically designated communities or, alternatively, in the "sale" of the pennysavers, which has been subsidized by Chanry's advertisers, to the general public. Under the first scenario, petitioner asserts that an actual and/or constructive transfer may be found in the delivery of the pennysavers to populations designated by the advertisers and, further, that the payment of advertising fees by the advertisers to Chanry provides the required consideration. Under the alternative approach, the transfer would purportedly occur upon the "subsidized" delivery of the pennysavers by Chanry to the general public.

The Tribunal rejected petitioner's arguments based upon its finding that the advertisers were not buying the pennysaver but, rather, were purchasing Chanry's services in preparing an advertisement and arranging for its distribution through the pennysavers. This finding was based, in part, upon the nature of the fees paid by the advertisers which, as noted previously, were determined by the size of the ad and the particular distribution zone. The Tribunal concluded that because the advertisers' only interest in the pennysavers was that it contain ads of an agreed-upon size and content, any consideration paid by the advertisers was not for the sale of the pennysavers but, rather, for Chanry's advertising services. This determination is fully supported by the record. Although petitioner has offered alternative interpretations of Tax Law § 1115 (a) (12) and § 1115 (c), he has not met his burden of establishing that such interpretations are the only reasonable ones (see, Matter of Dental Socy. v New York State Tax Commn., 148 AD2d 791, 792-793, supra). To the extent that petitioner specifically challenges the Tribunal's finding that "Chanry's activities consisted of advertising services of which the [pennysavers] were a part", we are of the view that the record as a whole, particularly the facts as stipulated by the parties, fully supports this determination.

Finally, we reject petitioner's contention that certain amendments to Tax Law § 1115 (L 1977, ch 884) provide support for the claim that the transaction between Chanry

and its advertisers constituted a sale. The Tribunal's interpretation of the relevant statutory provisions *(see,* Tax Law § 1115 [i] [A] [sale of shopping paper to publisher exempt]; *see also,* Tax Law § 1101 [b] [4] [i] [resale/component parts]; § 1105 [c] [1] [newspaper exemption]) is rational and, hence, is entitled to deference *(see generally, Matter of 172 E. 122 St. Tenants Assn. v Schwarz,* 73 NY2d 340, 348; *Matter of Schwartz v Crosson,* 165 AD2d 147, 150). Petitioner's remaining arguments have been considered and rejected as either meritless or not properly before this Court due to petitioner's failure to raise them at the administrative level *(see generally, Matter of Scotsmen Press v State of New York Tax Appeals Tribunal,* 165 AD2d 630, 634, *supra).*

WEISS, P. J., MIKOLL, YESAWICH JR. and MERCURE, JJ., concur.

Adjudged that the determination is confirmed, without costs, and petition dismissed.