OPINION OF THE COURT
Thomas W. Keegan, J.
Plaintiff, Peter J. Stahlbrodt, owned and published, until August 31, 1984, a weekly penny saver advertising publication called "The Shopping Bag” which was distributed free of *573 charge in Monroe County, New York. Stahlbrodt’s successor-in-interest, plaintiff Greater Rochester Advertiser, Inc. (G.R.A.), has published "The Shopping Bag” since September 1, 1984.
By decision of August 18, 1994, the Tax Appeals Tribunal affirmed an Administrative Law Judge’s (ALJ) decision sustaining a notice of determination and demand for payment of sales and use taxes, assessing sales tax against plaintiff Stahlbrodt, after an audit, in the amount of $61,992.87, relating to the purchase of printing services, for the period from June 1, 1981 to August 31, 1984, performed in publishing "The Shopping Bag”. On December 3, 1993, plaintiff G.R.A. was issued a similar notice of determination for sales tax for printing services, for the period September 1, 1984 to November 30, 1991, in the amount of $549,238, plus interest; and by stipulation the administrative hearing pending before the Division of Tax Appeals on G.R.A.’s petition for revision has been adjourned pending this proceeding.
Plaintiffs instituted this action for a declaratory judgment, seeking a ruling that, inter alia, certain conditions in the sales tax exemption statute (see, Tax Law § 1115 [i]) relating to shopping papers violate the First and Fourteenth Amendments to the US Constitution, as well as article I, § 11 of the NY Constitution. Specifically, plaintiffs raise the claim that the requirement that to receive the tax exemption "[t]he advertisements in such publication shall not exceed ninety percent of the printed area of [each issue]” (Tax Law § 1115 [i] [C]) is an unconstitutional content-based regulation of free speech. For the reasons to follow, plaintiffs’ motion for summary judgment seeking declaratory relief is denied in all respects, and the second amended complaint is dismissed.
BACKGROUND
Plaintiff Stahlbrodt published "The Shopping Bag” from June 1, 1981 through August 31, 1984. After an audit, the defendant Division of Taxation determined that the publication did not satisfy the sales and use tax exemption statutory condition that its advertising not exceed 90% of the printed area of each issue, finding that its nonadvertising space ranged from 1.4% to 5.5%. Accordingly, a notice of determination, dated February 5, 1985, assessed sales and use tax related to the purchase of printing services performed to publish the penny saver. Plaintiff objected, claiming entitlement to the exemption for "shopping papers” (Tax Law § 1115 [i]). The parties *574 stipulated that the issue could be resolved on documentary evidence and without a formal hearing (see, 20 NYCRR 3000.8) and agreed as follows:
(1) The only issues for determination in this matter are:
(a) Whether petitioner’s publications qualify for exemption from sales and use taxes pursuant to the Tax Law, and
(b) if not, whether the tax imposed on printing services purchased by petitioner in conjunction with said publications is unconstitutional.
(2) The audit methodology employed in this case, and the amount of tax calculated due by that method, are not in controversy.
(3) More than 90% of the printed material in each issue of petitioner’s publications for the period at issue consisted of advertisements.
The Division of Tax Appeals denied plaintiff’s petition and sustained the notice of determination, concluding that: (1) plaintiff did not qualify for the shopping paper exemption under Tax Law § 1115 (i) (A); (2) the publication is not a newspaper under Tax Law § 1115 (a) (5) (sales and use tax exemption for retail sale of newspapers); and (3) the purchase of printing services is not a sale for resale exemption under Tax Law § 1105 (c), as the transaction between the publisher (plaintiff) and its advertisers is not a sale of the shopping paper. The ALJ declined to address plaintiffs claims regarding the facial constitutionality of the 90% advertising rule in Tax Law § 1115 (i) (C) which limits the tax exemption for shopping papers, as being outside the Division’s scope of review. The Tax Appeals Tribunal affirmed, essentially adopting the ALJ’s reasoning and determinations. Plaintiff did not commence a CPLR article 78 proceeding.
Defendant issued a similar notice of determination against plaintiff G.R.A. for sales and use tax for printing services purchased in the publication of "The Shopping Bag” for the period September 1, 1984 through November 30, 1991. The administrative proceeding addressing G.R.A.’s petition for re-determination was stayed by stipulation and is, apparently, still pending.[1]
*575 ACTION FOR DECLARATORY JUDGMENT
Plaintiffs instituted, this action for a declaratory judgment, raising four claims, alleging that: (1) the 90% advertising rule in Tax Law § 1115 (i) (C), which limits tax exemptions for shopping papers, is an unconstitutional content-based discriminatory provision which violates the First Amendment and gives rise to a cause of action under 42 USC §§ 1983 and 1988; (2) the 90% advertisement rule is unconstitutional because it prevents shopping papers from qualifying as "newspapers” whose retail sales are exempt from sales and use tax under Tax Law § 1115 (a) (5), and thus singles out a small group within the press for distinct tax treatment based solely on the content of their speech; (3) the 90% rule (Tax Law § 1115 [i] [C]) denies equal protection to shopping papers by taxing them but exempting "similarly situated taxpayers”; and (4) seeking attorney’s fees pursuant to 42 USC § 1988. Plaintiffs seek a declaration of unconstitutionality as to the 90% advertising rule of Tax Law § 1115 (i) (C), excision of that requirement, a declaration that a shopping paper is "the same as and subject to tax as a newspaper”, and a recalculation of their sales/use taxes due for the publication period at issue and a refund of any overpayments.
PROCEDURAL NOTE
At the outset, a matter of procedure must be addressed. While plaintiffs’ failure to exhaust administrative remedies, e.g., plaintiff’s (Stahlbrodt’s) failure to commence a timely CPLR article 78 proceeding challenging respondent’s administrative determination, does not bar a challenge to an administrative action as unconstitutional, it does limit the scope of judicial review to a facial challenge to the statute itself (see, Matter of Glenwood TV v Ratner, 103 AD2d 322, 327 [2d Dept 1984, Titone, J. P.], affd 65 NY2d 642, appeal dismissed 474 US 916; Matter of R & G Outfitters v Bouchard, 101 AD2d 642, 643 [3d Dept 1984]). An article 78 proceeding is the proper vehicle for determining whether a statute in a specific instance has been applied in an unconstitutional manner, or for challenging tax assessment determinations or the applicability of a tax provision which turns on unresolved issues of fact (Matter of R & G Outfitters v Bouchard, supra; W. T. Wang, Inc. v New York State Dept. of Taxation & Fin., 88 AD2d 825, 826 [1st Dept 1982], affd 58 NY2d 1021; Allstate Ins. Co. v Tax Commn., 115 AD2d 831, 834 [3d Dept 1985, Levine, J.], affd 67 NY2d 999). Indeed, the Tax Law provides an exclusive administrative *576 review procedure (see, Tax Law § 1138 [a] [1] [Division of Tax Appeals]; § 2010 [1], [4]; § 2016). A decision of the Tax Appeals Tribunal "shall finally and irrevocably decide all the issues which were raised in [the] proceedings” unless petitioner institutes an article 78 proceeding within four months in the Appellate Division, Third Department (Tax Law § 2016). The Tax Law specifically precludes review of a determination of tax liability in an action for declaratory judgment or any action other than an article 78 proceeding (Tax Law § 1140).
In the absence of factual issues, however, a declaratory judgment action is an appropriate vehicle to challenge the validity or application of a particular statute without exhausting administrative remedies (see, Compass Adjusters & Investigators v Commissioner of Taxation & Fin. of State of N. Y., 197 AD2d 38, 40 [3d Dept 1994]; National Merchandising Corp. v New York State Dept. of Taxation & Fin., 63 AD2d 785, 786 [3d Dept 1978]). Accordingly, plaintiffs’ failure to exhaust administrative remedies or commence an article 78 proceeding is not a bar to this court’s addressing their claims of facial unconstitutionality or inapplicability — as a matter of law — of Tax Law provisions. To the extent, however, that plaintiffs seek review — in its discussion of the Tax Law § 1115 (a) (5) exemption for newspapers — of any administrative factual determination regarding "The Shopping Bag” or the unconstitutionality as applied to it of Tax Law provisions, such factual issues and review of the administrative determination are outside the scope of this declaratory judgment action (Compass Adjusters & Investigators v Commissioner of Taxation & Fin. of State of N. Y., supra; Allstate Ins. Co. v Tax Commn., supra).
TAX LAW § 1115 (i) (c) — THE 90% ADVERTISEMENT RULE
The Tax Law imposes sales tax, inter alia, on receipts from every sale (except resale) of printing services (Tax Law § 1105 [c] [2]). The Tax Law exempts from sales tax so imposed the receipts from the sale of printing services performed in publishing a "shopping paper” (Tax Law § 1115 [i] [A]). A "shopping paper” is defined[2] as "those community publications variously known as consumer papers, pennysavers, shopping guides, town criers, dollar stretchers and other similar publications, distributed to the public, without consideration, for purposes of *577 advertising and public information” (Tax Law § 1115 [i] [B] [prior to being amended Aug. 10, 1990]; see, n 2). The statute further provides that to qualify as a shopping paper for purposes of the exemption, the publication must:
"(1) be distributed to the public on a community-wide basis,
"(2) be published at stated intervals at least fifty times a year;
"(3) having continuity as to title and general nature of content from issue to issue,
"(4) contain in each issue news of general or community interest and community notices or editorial comment or articles by different authors;
"(5) not constitute a book, either singly or when successive issues are put together;
"(6) contain in each issue advertisements from numerous unrelated advertisers;
"(7) be independently owned in that the publication is not owned by or under the control of the owners or lessees of a shopping center or a merchants association or similar entity or a business which sells property or services (other than advertising) and the advertisements in such publication are not predominantly for the property or services sold by such business; and
"(8) meet the requirement set forth in paragraph (C) of this subdivision.” (Tax Law § 1115 [i] [B].)
Paragraph (C), which is at the very center of this action, requires that ”[t]he advertisements in such publication shall not exceed ninety percent of the printed area of [each issue]”[3] (Tax Law § 1115 [i] [C] [emphasis supplied]). No definition of "advertisements” is provided. The exemption further provides that a "shopping bag” shall not include — for purposes of the sales tax exemption — "mail order and other catalogs, advertising fliers, travel brochures, house organs, theater programs, telephone directories, shipping and restaurant guides, racing tip and form sheets, shopping center advertising sheets and similar publications” (Tax Law § 1115 [i] [D]).
The shopping paper sales tax exemption (Tax Law § 1115 [i]) was adopted in 1977 with the 90% advertisement rule "so as to *578 preclude the application of the exemption to publications which do not serve social purposes similar to those served by newspapers and periodicals which are [exempt]” (Governor’s Mem approving L 1977, ch 884, 1977 NY Legis Ann, at 306). The retail sale of newspapers and periodicals is exempt from sales tax under section 1115 (a) (5) of the Tax Law (discussed infra).
There is no specific statutory exemption for the purchase of printing services for newspapers — as there is for pennysavers— which are taxed under Tax Law § 1105 (c) (2), although the purchase of printing services for newspapers may be exempt as purchases for resale (see, Tax Law § 1105 [c]; 20 NYCRR 528.6 [defines newspaper and shopping papers and exemptions under Tax Law § 1115 [a] [5] and [i], respectively]).
Plaintiffs contend that the 90% advertising rule (Tax Law § 1115 [i] [C]) abridges the constitutional rights of free speech and press in that it denies a tax exemption based upon the content of the message conveyed. Plaintiffs submit that the rule exceeds any acceptable regulation of speech/press and imposes "an undue penalty on certain discrete and limited segments of the press” based upon their content, presumably shopping papers that exceed the 90% advertising condition. Specifically, plaintiffs claim that the rule requires scrutiny and an evaluation of the content of publications to determine their tax status, contrary to First Amendment proscriptions (see, Arkansas Writers’ Project v Ragland, 481 US 221, 230), and accords preferential treatment to the advertising and news contained in newspapers. It is also claimed that the rule restricts through taxation the dissemination of advertising and news in shopping papers by artificially constructing a distinction between them where none exists and thus denies plaintiffs equal protection of the laws.
Defendant argues that the shopping paper exemption is not based upon the content of the publication per se, and only requires an evaluation of whether its printed area contains more than 90% advertising, i.e., it distinguishes based upon the form and function of the publication and makes no distinction based upon the content of the advertising or content of the 10% nonadvertising printed matter. The court notes that the parties in this action present a question of first impression in this State.
The United States Supreme Court has recognized that "[ijnherent in the power to tax is the power to discriminate in taxation” (Leathers v Medlock, 499 US 439, 451), and "Legisla *579 tures have especially broad latitude in creating classifications and distinctions in tax statutes” (Regan v Taxation with Representation of Wash., 461 US 540, 547). The Tax Law enjoys a strong presumption of constitutionality — which is rebuttable, but plaintiffs bear the heavy burden of proving its provisions unconstitutional beyond a reasonable doubt (Rochester Gas & Elec. Corp. v Public Serv. Commn., 71 NY2d 313, 319-320). Differential taxation of the media or press is only constitutionally suspect in certain defined circumstances, as where it singles out the press for special treatment, targets and thereby penalizes a small segment of the press, or where it is based on the content of the ideas being expressed (see, Leathers v Medlock, supra; Arkansas Writers’ Project v Ragland, 481 US 221, supra; Minneapolis Star v Minnesota Commr. of Revenue, 460. US 575; Regan v Taxation with Representation of Wash., 461 US 540, supra). Importantly, the Legislature "is not required to subsidize First Amendment rights through a tax exemption” (Leathers v Medlock, supra, 499 US, at 450, citing Regan v Taxation with Representation of Wash., supra, 461 US, at 546). The guiding principle of Leathers, Minneapolis Star, Ragland and their progeny is that "differential taxation of First Amendment speakers is constitutionally suspect when it threatens to suppress the expression of particular ideas or viewpoints” (Leathers v Medlock, supra, at 447).
In Ragland (481 US 221, supra), upon which plaintiffs place heavy reliance in contending that the 90% rule is a content-based differential tax, the Supreme Court held that Arkansas’ sales tax scheme violated the First Amendment freedom of press guarantee by taxing general interest magazines but exempting certain topical magazines (religions, professional, trade and sports journals). The infirmity was in the selective discrimination against a small group of magazines rather than all magazines; the tax blatantly accorded or denied an exemption based upon the substantive content and subject matter of the magazine (supra, at 229-230).
In Minneapolis Star (460 US 575, supra), the Supreme Court held a Minnesota special use tax to be violative of the First Amendment where it was imposed on the cost of paper and ink consumed in production of publications but exempted the first $100,000 worth of paper and ink consumed annually, resulting in only a small fraction of the newspapers paying the tax and the Minneapolis Star paying roughly two thirds of the total revenue raised by the tax. The infirmity was twofold: first, the tax singled out the press for special treatment (i.e., taxation), *580 and second, it targeted a small, narrowly defined group of newspapers (i.e., the larger ones who exceeded the $100,000 exemption), to bear the burden, thus resembling "more a penalty” (supra, at 592).
In Leathers (499 US 439, supra), the Supreme Court upheld against a First Amendment challenge Arkansas’ extension of a generally applicable sales tax to cable television services while exempting print media, finding it did not threaten to suppress the expression of certain ideas or viewpoints. The tax did not single out the press as it was a tax of general applicability to tangible personal property and services, and did not select a narrow group to bear the tax burden but applied uniformly to all cable systems in operation. Further, the sales tax was not content-based as the communications on the cable systems, which were subject to the tax, did not differ in their message or content from that in the print media exempted from the tax (supra, at 449).
In the action sub judice, the sales tax on the sale of printing services is one of general applicability (see, Tax Law § 1105 [c] [2]) which does not single out the press, unlike the tax in Minneapolis Star (supra; see also, Matter of Henry v Wetzler, 82 NY2d 859, 861, cert denied 511 US 1126). It applies to newspapers and shopping papers, and the exemption is for the latter only. Neither the sales tax itself (Tax Law § 1105 [c] [2]) nor the shopping paper exemption (Tax Law § 1115 [i]) targets a small group of shopping papers. Unlike the sales tax in Minneapolis Star which disproportionately targeted the largest newspapers, and the sales tax in Ragland (supra) which taxed only certain magazines based upon subject matter, the sales tax applies to all shopping papers and the exemption criteria are available to all shopping papers. There is no contention that plaintiffs are unable to achieve the advertising to nonadvertising ratio to obtain the exemption, only the implicit objection that it will reduce profits. The content of the advertisements is in no way regulated, and the requirement that at least 10% of the publication be non-ads does not regulate the substantive content, ideas, viewpoints or subject matter of the nonadvertising portion. Plaintiffs are free to express any ideas or views they choose in the advertising as well as the nonadvertising portions.
Plaintiffs’ claim on this point essentially boils down to this: Because a publisher cannot simultaneously obtain the Tax Law § 1115 (i) exemption and publish advertisements in the 10% of their shopping paper (i.e., all advertisements), their *581 freedom of expression and press are violated. However, the United States Supreme Court’s precedents and analysis in this regard have not gone so far and do not command that conclusion. Since the tax and the shopping paper exemption do not target or threaten to suppress particular ideas or viewpoints or give rise to a danger of censorship (see, Leathers v Medlock, supra, 499 US, at 447-448), they present none of the constitutional First Amendment difficulties identified in differential taxation jurisprudence (see, Redwood Empire Publ. Co. v State Bd. of Equalization, 207 Cal App 3d 1334, 255 Cal Rptr 514 [1989] [upheld tax regulation defining newspapers so as to exclude publications consisting of more than 90% ads from sales/use tax exemption for newspapers]).
The evaluation required of shopping papers to determine if they exceed 90% advertising is not analogous, as plaintiffs suggest, to the content-based analysis of the subject matter of magazines found to be repugnant to the First Amendment in Ragland (supra, 481 US, at 229-230). The 90% rule uses objective criteria to measure the percentage of printed space devoted to the function of news of community interest and advertising regardless of their subject matter, and the methodology has been upheld as rational (see, Matter of Scotsmen Press v State of N. Y. Tax Appeals Tribunal, 165 AD2d 630, 633 [3d Dept 1991]). Further, the agency’s interpretation of a statute it is charged with enforcing and which it assisted in drafting is accorded great deference and the lack of a statutory definition of the term "advertising” has not resulted in unbridled discretion, as a common understanding of that term has been recognized (see, supra, at 633).
Moreover, the tax does not violate the First Amendment because it treats newspapers differently from shopping papers. The distinction is not based upon the content of the publications. Indeed, to be classified as a "newspaper” for purposes of the Tax Law § 1115 (a) exemption for the retail sale of newspapers, a publication "must contain matters of general interest and reports of current events”, inter alia (see, 20 NYCRR 528.6 [b] [1] [iv]). Similarly, to be classified as a "shopping paper” for purposes of obtaining an exemption for the purchase of printing services (or sale of the publication to the publisher), each issue must contain "news of general or community interest and community notices or editorial comment or articles by different authors” (Tax Law § 1115 [i] [B] [4]; 20 NYCRR 528.6 [d]). Shopping papers are a recognized subset of newspapers and are defined by their higher percentage of *582 advertising and their narrower "purposes of advertising and public information” (Tax Law § 1115 [i] [B]). The differential taxation is not constitutionally suspect because it does not threaten to suppress particular ideas or viewpoints (Leathers v Medlock, supra, 499 US, at 447). The sales tax (Tax Law § 1105 [c] [2]) is broad based and generally applicable outside the press (contrast, Minneapolis Star v Minnesota Commr. of Revenue, 460 US 575, supra), and the sales tax and exemption apply uniformly to all shopping papers (contrast, Arkansas Writers’ Project v Ragland, 481 US 221, supra). The Legislature possesses great freedom in creating classifications in matters of taxation (Regan v Taxation with Representation of Wash., supra, 461 US, at 547-548; see, Leathers v Medlock, supra, 499 US, at 449-452), and may simply chose to exclude certain media from a generally applicable tax without violating the First Amendment where the distinction is not made on the basis of ideas (Leathers v Medlock, supra, at 450, 453, and cases cited).
The sales tax on printing services (Tax Law § 1105 [c] [2]) and the shopping paper exemption (Tax Law § 1115 [i]) present none of the First Amendment difficulties that have led the United States Supreme Court to strike down differential taxation in the past, and because the differential treatment of newspapers (Tax Law § 1115 [a] [5]; 20 NYCRR 528.6 [exemption for retail sales]) and shopping papers (Tax Law § 1115 [i] [exemption for purchase of printing services or sale to publisher]) does not threaten to suppress ideas, consequently the court concludes that the scheme does not violate the First Amendment protections (Leathers v Medlock, supra; Arkansas Writers’ Project v Ragland, 481 US, at 233, supra). Accordingly, the court sees no need to further address the constitutional tests applicable to statutory bans on speech or content-based regulation of free speech and press (see, Florida Bar v Went For It, 515 US 618, 623-624; Leathers v Medlock, supra; Arkansas Writers’ Project v Ragland, supra; Central Hudson Gas & Elec, v Public Serv. Commn., 447 US 557).
In addition to the claim of facial unconstitutionality of the Tax Law, plaintiffs make the additional, related claim that "The Shopping Bag” is a "newspaper” under the Tax Law (Tax Law § 1115 [a] [5]; 20 NYCRR 528.6 [b]) entitled to be taxed as such. To the extent plaintiffs seek to review the factual determination of the Tax Appeals Tribunal that "The Shopping Bag” does not qualify as a "newspaper” because an audit of various issues revealed that it does not meet the regulatory requirement that newspapers contain "reports of current *583 events” (20 NYCRR 528.6 [b] [1] [iv]), this is a factual question outside the scope of review in this declaratory judgment action (see, Allstate Ins. Co. v Tax Commn., supra, 115 AD2d, at 834, affd 67 NY2d 999; Matter of Glenwood TV v Ratner, supra, 103 AD2d, at 327, affd 65 NY2d 642; Tax Law § 1140).
Plaintiffs suggest as well a legal argument addressed to the face of the tax provisions which the court may properly address. Plaintiffs claim that if it were not for the 90% advertising rule, shopping papers could qualify as a "newspaper” under Tax Law § 1115 (a) (5) even though they are distributed free of charge (see, 20 NYCRR 528.6 [b] [2] [example 2] ["A publication distributed free of charge is not excluded from qualifying as a newspaper”]), because there is no limit on the percentage of advertising in a newspaper. Plaintiffs claim that this violates the First Amendment as a content-based distinction, and denies shopping papers equal protection.
First — to clarify the Tax Law — section 1115 (a) (5) exempts retail sale of newspapers from sales tax imposed by section 1105 (a); shopping papers by definition are distributed free of charge (Tax Law § 1115 [i] [B]) and there is no retail sale to the public subject to sales taxation under section 1105 (a). Second, there is an exemption from sales tax for shopping papers for their purchase of printing services or sale to the publisher (Tax Law § 1115 [i] [A]), but no explicit exemption for newspapers’ purchase of printing services unless it falls under the purchase for resale exemption (see, Tax Law § 1105 [c]). Thus, even if all "shopping papers” were "newspapers” under section 1115 (a) (5), this would not automatically accord a "newspaper” exemption from sales tax for printing services purchased because no such exemption exists.
Plaintiffs’ contention suggests disparate unconstitutional treatment of "similarly situated” newspapers and shopping papers. However, a newspaper distributed to the public free of charge would be subject to sales tax on the purchase of printing services for publication (see, Tax Law § 1105 [c] [2] [sales tax applicable if not a purchase for resale]; contrast, Tax Law § 1115 [i] [exemption applies only to shopping papers]) unless it could meet the criteria for a shopping paper (Tax Law § 1115 [i]). A shopping paper (necessarily free) is subject to sales tax on printing services purchased for publishing, unless it can meet the exemption criteria (Tax Law §1115 [i]). Thus, free newspapers are not accorded any preferential tax treatment in relation to sales tax on printing services purchased.
The only distinction to be drawn is that newspapers sold at retail could claim an exemption for purchase of printing ser *584 vices as a purchase for resale regardless of their advertising content or ratio (see, Tax Law § 1105 [c] [2]), while shopping papers must satisfy the special exemption criteria in Tax Law § 1115 (i), including the 90% advertising rule. For the reasoning discussed above, the court concludes that such a distinction is not based upon the ideas expressed, does not suppress expression, and does not transgress First Amendment protections (see, Leathers v Medlock, supra). Further, the sales tax is one of general applicability (Tax Law § 1105 [c] [2]) and the exemption applies to all shopping papers (Tax Law § 1115 [i]) and does not deny them equal protection merely because they are differentiated from newspapers (see, Redwood Empire Publ. Co. v State Bd. of Equalization, 207 Cal App 3d 1334, 255 Cal Rptr 514, supra). The Legislature possesses great freedom in making classifications for taxation purposes (see, Regan v Taxation with Representation of Wash., supra, 461 US, at 547-548; Madden v Kentucky, 309 US 83, 87-88 [an equal protection case]). Plaintiffs have not demonstrated that a newspaper and a shopping paper containing over 90% advertisement are "similarly situated” such that a differential tax treatment of them is irrational, palpably arbitrary or effects invidious discrimination or a denial of equal protection to the latter (see, Trump v Chu, 65 NY2d 20, appeal dismissed 474 US 915). Accordingly, plaintiffs have not met their "heavy burden” (supra) of demonstrating the constitutional invalidity of the shopping paper exemption criteria (Tax Law § 1115 [i]) under the Federal (US Const 1st, 14th Amends) or State (NY Const, art I, § 11) Constitutions.
Plaintiffs, having failed to demonstrate a constitutional deprivation of right under 42 USC § 1983, are not entitled to an award of attorney’s fees under 42 USC § 1988.
Plaintiffs’ motion for summary judgment; seeking a declaration of unconstitutionality as to Tax Law § 1115 (i) (C), is denied in all respects and the second amended complaint is dismissed.

. Plaintiff had instituted a constitutional challenge in Federal court in February of 1995, which was ultimately dismissed upon stipulation of the parties (dated May 5, 1995).

. Section 1115 (i) (B) of the Tax Law was amended effective August 10, 1990 so as to delete the underlined language only from the definition of "shopping paper”. The quoted definition was in effect from June 1, 1981 through August 9, 1990, covering most of the period at issue in this action.

. Plaintiffs stipulated at the administrative review that more than 90% of the printed material in each issue for the relevant period consisted of advertisements. In any event, whether plaintiffs satisfied this condition or presently satisfied it is outside of the scope of this declaratory judgment action. The 90% rule was invoked against plaintiffs and thus there is no question of their standing to challenge it as facially unconstitutional.